**Paul D. CONGDON, Jr., et al.**

v.

**Walter STRINE, Sr., d/b/a Media Real Estate.**

**Civ. A. No. 93–4107.**

United States District Court, E.D. Pennsylvania.

May 24, 1994.

Joseph M. Gontram, Ruch & Gontram, Philadelphia, PA, for plaintiff.

Stephen A. Durham, Paul, Mardinly, Durham, James, Flandreau & Rodger, Media, PA, for defendant.

## MEMORANDUM

DALZELL, District Judge.

Plaintiffs Linda Congdon and her husband Paul Congdon filed this action against defendant Walter Strine, Sr. d/b/a Media Real Estate ("Strine"), alleging handicap discrimination in violation of the Fair Housing Amendments Act, 42 U.S.C. §§ 3601–3631 ("FHAA" or "Title VIII") and the Pennsylvania Human Relations Act, 43 Pa.Con.Stat. Ann. §§ 951, *et seq.* ("PHRA"). Plaintiffs' complaint alleges that defendant's maintenance policies regarding the elevator in the apartment building where the Congdons live fail to take account of Mrs. Congdon's disability, and that defendant's eviction threat was in retaliation for filing complaints with governmental agencies.

Strine has filed a motion for summary judgment. For the reasons that follow, we will grant his motion.

I. *Factual Background*

The Congdons reside in an apartment at 499 W. Jefferson Street, Media, Pennsylvania ("the building"), which Strine owns. Plaintiffs' Complaint ("Complaint"), ¶ 6. The Congdons have lived in this apartment since 1983. Plaintiffs' Memorandum in Opposition to Defendant's Motion for Summary Judgment ("Plaintiffs' Response"), Exhibit D at ¶ 1. Their apartment is on the fourth floor and may be reached by use of the stairway or the elevator. During the first year of occupancy, the Congdons had a one-year lease; since that time their tenancy has been on a month to month basis. Plaintiffs' Response, Exhibit D at ¶ 5.[1]

Mrs. Congdon suffers from various diseases, and since 1992 has been largely confined to a wheelchair. Complaint at ¶ 5; Plaintiffs' Response, Exhibit D at ¶ 2. Some time before January of 1993, the building's elevator "began to experience recurring breakdowns". Pretrial Stipulation, Agreed Facts, ¶ 3; Plaintiffs' Complaint at ¶¶ 10, 11. Because of these breakdowns, Mrs. Congdon "has used the stairs and had some physical problems that may be related to her increased activity." Agreed Facts, ¶ 4; Complaint at ¶ 14.

In April of 1993, the Congdons filed a complaint with the Bureau of Consumer Protection, Office of the Attorney General, Commonwealth of Pennsylvania, describing the problems with the elevator and their alleged discriminatory effects. Agreed Facts, ¶ 5; Complaint at ¶ 17, Plaintiffs' Response, Exhibit D at ¶ 6. The Congdons also filed complaints with the Delaware County Consumer Affairs Department, and on May 17, 1993, they filed a complaint with the U.S. Department of Housing and Urban Development ("HUD"), alleging a violation of the Fair Housing Act. Agreed Facts, ¶ 14. The next day, HUD referred its complaint to the Pennsylvania Human Relations Commission. *Id.*

On May 26, 1993, Strine advised the Congdons that their lease was not being renewed and that they were to vacate the premises by

August 31, 1993. *Id.* at ¶ 5. The Congdons did not vacate the premises by August 31, 1993. Defendant's Motion, Exhibit X at ¶ 5. Strine took no action against them, however, and has neither taken further action to evict plaintiffs nor filed any legal proceedings against them. *Id.* at ¶ 4, Defendant's Motion p. 5. Strine offered to rent to the Congdons a ground floor apartment in the same building or, alternatively, an apartment in another building he owned, Defendant's Motion, Exhibits P and R, *see also* Exhibit C, but the Congdons rejected both offers as unsuitable. Defendant's Motion, Exhibit R, Plaintiffs' Response, Exhibit D at ¶ 4.

The Congdons commenced this suit on July 30, 1993. Strine then filed a motion to dismiss, which we on February 24, 1994, granted in part, dismissing (on plaintiffs' concession) the claim alleging a violation of 42 U.S.C. § 1983. Strine now asks us to grant summary judgment in his favor on the remaining claims alleging violations of the Fair Housing Amendments Act, and of the Pennsylvania Human Relations Act.

II. *Legal Standard*

■ It is of course well-established that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). An issue is "genuine" only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A factual dispute is "material" only if it might affect the outcome of the suit under governing law, *id.* at 248, 106 S.Ct. at 2510, and all inferences must be drawn, and all doubts resolved, in favor of the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 993, 8 L.Ed.2d 176 (1962); *Gans v. Mundy,* 762 F.2d 338,

---

**1.** Curiously, the Congdons refused Strine's offer "to renew the Congdons' lease on a year-to-year rather than month-to-month basis." Affidavit of Dan Labes, ¶ 3, Exhibit Z of Defendant's brief in support of his motion for summary judgment. This statement is not controverted.

341 (3d Cir.), *cert. denied,* 474 U.S. 1010, 106 S.Ct. 537, 88 L.Ed.2d 467 (1985).

■ On a motion for summary judgment, the moving party bears the initial burden of identifying for the Court those portions of the record that it believes demonstrate the absence of dispute as to any material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). To defeat summary judgment, the non-moving party "may not rest upon the mere allegations or denials of [its] pleading, but [its] response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e).

■ Specifically, the non-moving party must produce evidence such that a reasonable juror could find for that party, *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510, and "cannot rely upon conclusory allegations in its pleadings or in memoranda and briefs to establish a genuine issue of material fact." *Pastore v. The Bell Telephone Company of Pennsylvania,* 24 F.3d 508, 511 (3d Cir.1994). When considering how a reasonable juror would rule, the court should apply the substantive evidentiary standard—in this instance, a preponderance of the evidence— that the fact-finder would be required to use at trial. *Id.,* 477 U.S. at 252, 106 S.Ct. at 2512. A mere scintilla of evidence will not require the court to send the question to the fact-finder. *Id.* at 251, 106 S.Ct. at 2511 (citing *Improvement Co. v. Munson,* 14 Wall. 442, 448, 20 L.Ed. 867 (1872)).

The parties have filed a Pretrial Stipulation which, in § 2, sets forth five paragraphs. These stipulated facts provide the necessary predicate to determine this motion, together with the other uncontroverted evidence cited in this memorandum.

### III. *Legal Analysis*

The Fair Housing Amendments Act of 1988 amended the Fair Housing Act of 1968 to extend protection to people with disabilities. Pub.L. No. 100–430, 102 Stat. 1619, *codified at* 42 U.S.C. § 3601, *et seq.* The Congdons claim that Strine violated 42 U.S.C. § 3604(f) and 42 U.S.C. § 3617, which make it unlawful to discriminate in the sale or rental of housing because of a disability. It is undisputed that Mrs. Congdon is handicapped within the meaning of the statute. *Denial of Housing under 42 U.S.C. § 3604(f)(1)*

■ Before we examine whether plaintiffs have made out a *prima facie* case under Title VIII, we must first determine whether defendant's actions implicate the FHAA. 42 U.S.C. § 3604(f)(1) provides in relevant part that it is unlawful:

[t]o discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap of—

(A) that buyer or renter;

(B) a person residing in ... that dwelling.

This case differs from most Title VIII cases in that there was no actual denial of housing. It is undisputed that Strine continues to rent an apartment to the Congdons and that Linda Congdon has been living in the apartment since 1983. Plaintiffs' Response, Exhibit D at ¶ 1; Defendant's Motion, Exhibit X. There is no evidence that Strine discriminated in renting to Mrs. Congdon or that she has been denied housing. The Congdons essentially claim that the *threatened* eviction and the refusal to provide reasonable accommodations violate § 3604(f)(1). Plaintiffs' Response, p. 6–7. Thus, we must determine whether Strine's actions fall within the ambit of the "otherwise make unavailable or deny" language of § 3604(f)(1).

In *Growth Horizons, Inc. v. Delaware County,* 983 F.2d 1277 (3d Cir.1993), our Court of Appeals stated that:

[w]e would be reluctant to hold that a plaintiff asserting a claim under § 3604(f)(1) must prove that the defendant made it impossible for a handicapped person to occupy a dwelling. We think it likely that conduct short of foreclosing a housing opportunity altogether may violate the statute.

983 F.2d at 1282–1283 (footnotes omitted). Although the Court of Appeals did not elaborate in *Growth Horizons* on what specific conduct it had in mind, we do not believe it

contemplated the undramatic setting presented here as one which would violate the statute.

While a threat of eviction should not be taken lightly, Strine and his agents made offers to rent other apartments to the Congdons, including an offer to rent her an apartment in the same building on the first floor. Defendant's Motion, Exhibits M, P and R. Strine took no further actions to enforce the eviction notice. Defendant's Motion Exhibit X at ¶ 4, Defendant's Motion at 5. Indeed, Strine never denied housing to the Congdons. To the contrary, Strine undisputedly offered the Congdons alternatives, albeit not to their taste.

Although the Congdons do not specify *what* reasonable accommodations they think Strine must provide, we infer that they want Strine to provide better repairs to the elevator, a new elevator, or another apartment that is acceptable to Mrs. Congdon's needs for accessibility and parking. Taking as true that defendant failed to provide a trouble-free elevator or another apartment to plaintiffs' liking, the Congdons still were not denied housing. There is no evidence that Mrs. Congdon was unable to return to her apartment and had to spend the night elsewhere. The Congdons only allege that Mrs. Congdon at times "miss[ed] appointments and other daily activities" because she was unable to leave the apartment, Complaint at ¶ 13. Although it appears that Mrs. Congdon was inconvenienced, we do not find that these actions fall within the meaning of "make unavailable" or "deny" in § 3604(f)(1) any more than the occasional failure of the elevators in this courthouse "deny" courtrooms to litigants. Thus, we cannot find that defendant's conduct implicates § 3604(f)(1) of Title VIII.

*Discriminatory Provision of Services under 42 U.S.C. § 3604(f)(2)*

We next consider whether the Congdons make out a claim for a violation of 42 U.S.C. § 3604(f)(2), which provides in relevant part that it is unlawful:

[t]o discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap of—

(A) that person; or

(B) a person residing in . . . that dwelling . . .;

The Congdons do not allege that their terms, conditions or privileges of the rental differed from other tenants. In essence, the Congdons claim that Strine discriminated against them by providing poor elevator service. They allege that Strine's maintenance practices regarding the elevator were discriminatory because the breakdown of the elevator understandably created more hardships for Mrs. Congdon than it did to non-handicapped tenants. Complaint at ¶¶ 13, 21.

"To make out a *prima facie* case under Title VIII, a plaintiff can show either discriminatory treatment . . . or discriminatory effect alone, without proof of discriminatory intent . . ." *Doe v. Butler*, 892 F.2d 315, 323 (3d Cir.1989) (citations omitted). We shall consider the Congdons' "discriminatory treatment" and "discriminatory effect" theories separately.

For the Congdons to succeed on a "discriminatory treatment" claim, they need to show that Strine adopted and carried out his maintenance policies regarding the elevator with the intent to discriminate against Mrs. Congdon because of her disability. *See United States v. Schuylkill Township*, No. 90–2165, 1990 WL 180980, at *5, 1990 LEXIS 15555, at *19 (E.D.Pa. Nov. 16, 1990); *cf., International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 335 n. 15, 97 S.Ct. 1843, 1855 n. 15, 52 L.Ed.2d 396 (1977) (discussing disparate treatment and disparate impact in the Title VII context). The Congdons have not submitted any facts to show that Strine had such a discriminatory motive with regard to the elevator maintenance policies.

Plaintiffs only generally allege that Strine was motivated by a discriminatory intent. *See* Complaint at ¶¶ 21–25, Plaintiffs' Response at pp. 12–15. They proffer no evidence that Strine acted differently in providing elevator services to Mrs. Congdon. The elevator's imperfections doubtless vexed all the tenants, not solely Mrs. Congdon. Strine

thus did not stop providing elevator service exclusively to Mrs. Congdon.

■■■■■ Although we find no evidence of discriminatory treatment, plaintiffs need only show that Strine's policy regarding the elevator's maintenance had a discriminatory effect.[2] In considering the scope of the FHAA, we agree with the Seventh Circuit's refusal "to conclude that every action which produces discriminatory effects is illegal." *Metropolitan Housing Development Corp. v. Village of Arlington Heights*, 558 F.2d 1283, 1290 (7th Cir.1977), *cert. denied*, 434 U.S. 1025, 98 S.Ct. 752, 54 L.Ed.2d 772 (1978). The Seventh Circuit in that case listed four factors to guide a court in determining what conduct that produces a discriminatory impact, but which is taken without discriminatory intent, violates § 3604(a).[3] *Id.* at 1291. These factors are:

> (1) how strong is the plaintiff's showing of discriminatory effect; (2) is there some evidence of discriminatory intent, though not enough to satisfy the constitutional standard of *Washington v. Davis* [, 426 U.S. 229, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976) ]; (3) what is the defendant's interest in taking the action complained of; and (4) does the plaintiff seek to compel the defendant to affirmatively provide housing for members of minority groups or merely to restrain the defendant from interfering with individual property owners who wish to provide such housing.

*Id.* at 1290; *See also Horizon House Developmental Servs., Inc. v. Township of Upper-Southampton*, 804 F.Supp. 683, 697 (E.D.Pa. 1992).

Our Court of Appeals has observed that the legislative history of Title VIII suggests that the statute should be read expansively in order to "eliminate the adverse discriminatory effects of past and present prejudice in housing." *Resident Advisory Board v. Rizzo*, 564 F.2d 126, 147 (3d Cir.1977). The Supreme Court in *Trafficante v. Metropolitan Life Ins., Co.*, 409 U.S. 205, 93 S.Ct. 364, 34 L.Ed.2d 415 (1972) stated that "the language of the Act is broad and inclusive." 409 U.S. at 209, 93 S.Ct. at 367. With this breadth in mind, we will apply the factors set forth in *Metropolitan* to guide our analysis.

The first factor looks at how strong is the plaintiffs' showing of discriminatory effect. The Congdons submit evidence alleging that the elevator often suffered mechanical problems or broke down completely. Plaintiffs' Response, Exhibit D. Mrs. Congdon avers that when the elevator broke down she "has been forced to remain in her apartment and to miss appointments and other daily activities." Complaint at ¶ 13. Clearly, the elevator breakdowns affected Linda Congdon more severely than non-disabled tenants. There were times when she was unable to access her apartment without assistance or hardship, and was in general less able to enjoy her apartment. Therefore, we find that plaintiffs have made a showing of discriminatory effect in the provision of services to Linda Congdon. The first factor thus weighs in plaintiffs' favor.

With regard to the second factor, we must again look to see if there is evidence of discriminatory intent. The Congdons have proffered no facts supporting their allegation of discriminatory intent. In fact, Strine has offered Mrs. Congdon occupancy in other apartments and maintains a repair and servicing contract for the elevator. Defendant's Motion, Exhibit A. The Congdons have submitted no evidence that the defendant wilfully kept the elevator in a state of disrepair

---

**2.** If such a discriminatory effect is shown, the burden of proof then shifts to the defendant to establish a justification for the acts causing the discriminatory effects, and a court

> may be guided at the least by the following rough measures: a justification must serve, in theory and practice, a legitimate, bona fide interest of the Title VIII defendant, and the defendant must show that no alternative course of action could be adopted that would enable that interest to be served with less discriminatory impact.

*Resident Advisory Bd. v. Rizzo*, 564 F.2d 126, 149 (3d Cir.1977).

**3.** Prior to the FHAA, the equivalent section to § 3604(f)(1) was 42 U.S.C. § 3604(a) of the Civil Rights Act of 1968. While *Arlington Heights* involved alleged racial discrimination under Title VIII, we discern no principled distinction that would change the analysis where discrimination based on handicap is alleged.

because of Mrs. Congdon's disability. Therefore, the second factor weighs in Strine's favor.

The third factor, which asks us to consider "defendant's interest in taking the action complained of," also weighs in Strine's favor. Defendant has no business interest in having a faulty elevator that drives out frustrated tenants. Strine has a maintenance contract with an elevator servicing company precisely to serve his business interest of making it possible for all tenants to have elevator service. This company frequently serviced the offending elevator.[4] We therefore can perceive no interest Strine would have in perpetuating faulty elevator service.

The fourth *Metropolitan* factor directs us to examine the relief plaintiffs seek, *i.e.*, whether the Congdons want us to compel Strine affirmatively to provide services or whether they seek to restrain Strine from deliberately reducing the level of services he provides to Mrs. Congdon. This examination is predicated on the economic realities of affirmative relief:

> To require a defendant to appropriate money, utilize his land for a particular purpose, or take other affirmative steps toward integrated housing is a massive judicial intrusion on private autonomy.

558 F.2d at 1293.

The Congdons alternatively seek that this Court compel Strine to repair the elevator so that it *always* works properly, to replace the existing elevator with a new one, or to provide her with occupancy in another apartment. *See* Plaintiffs' Complaint at p 4. If the Congdons remain in their present unit (which seems to be their desire in view of their refusal to accept the alternatives proffered them), it seems that Strine would have to achieve the impossible to please them. Even a perfect landlord cannot maintain a completely problem-free elevator. Elevators are subject to malfunctioning like all mechanical devices.

The Congdons have not presented any facts which suggest that Strine is providing a

level of services inferior to the level of services he provides to the other tenants in the building. Especially in view of the alternatives Strine has offered the Congdons, we find no basis in § 3604(f)(2) that authorizes us to order Strine to install a new elevator or to assure that the present one is trouble-free.

*"Reasonable Accommodations"*

 Before we leave our analysis of whether there was a violation of § 3604(f), the Congdons ask us to consider subsection 3, which provides, in relevant part:

> For purposes of this subsection discrimination includes— ... (B) a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling ...

42 U.S.C. § 3604(f)(3).

In *Southeastern Community College v. Davis*, 442 U.S. 397, 99 S.Ct. 2361, 60 L.Ed.2d 980 (1979), the Supreme Court held that an accommodation is not reasonable if (1) it would require a "fundamental alteration in the nature of a program," or (2) if it would impose "undue financial or administrative burdens" on the defendant. 442 U.S. at 412–413, 99 S.Ct. at 2370. Applying this general rule, the District Court of New Jersey stated:

> "Reasonable accommodation" means changing some rule that is generally applicable to everyone so as to make its burden less onerous on the handicapped individual. Thus, where everyone is provided with 'equal access' to a building in the form of a staircase, reasonable accommodation to those in wheelchairs may require building a ramp.

*Oxford House, Inc. v. Cherry Hill*, 799 F.Supp. 450, 462, fn. 25 (D.N.J.1992).

The Congdons claim that Strine did not make a "reasonable accommodation" of Mrs. Congdon's disability. Although it is not clear from the complaint, it appears that plaintiffs base their claim on their allegations that Strine did not keep the elevator in better

---

4. The affidavit of the President of the elevator service company confirms that this firm made frequent repairs to 499 West Jefferson Street.

Affidavit of Richard Kennedy, ¶ 3, Exhibit Y to the brief in support of defendant's motion for summary judgment.

working condition, did not replace the elevator, or offer the Congdons another apartment that would accommodate Mrs. Congdon's disabilities. Plaintiffs' Response, p. 15–16.

Strine argues that he did make reasonable accommodations for Mrs. Congdon's disability in that he had a regular elevator maintenance contract, Defendant's Motion, Exhibit A, and offered the Congdons a first floor apartment in the same building, as well as another apartment in a building with two elevators. Defendant's Motion, Exhibits P and R. Lastly, Strine argues that forcing him to install a new elevator in the building would impose an undue financial burden because a new elevator would cost sixty-five to seventy thousand dollars, and such an expenditure would not be a reasonable accommodation for a month-to-month tenant. Defendant's Response to Plaintiffs' Reply Memorandum Regarding Defendant's Motion for Summary Judgment, p. 6, and Exhibit A.

The Congdons have not submitted any evidence of requests for reasonable accommodations that they made and were refused other than for a new elevator and to make the existing elevator trouble-free. Plaintiffs' Response, Exhibit A; Defendant's Motion, Exhibit C.

We agree with Strine that forcing him to install a new elevator would constitute, in this context, "a massive judicial intrusion on private autonomy." Such an intrusion would offend any decent respect for proportionality given that the Congdons seek a $65,000 capital expenditure when they are free to walk away from Strine on payment of only one month's rent. The Congdons' extravagant demand for such an "accommodation" thus cannot be deemed to be "reasonable".

As we have previously mentioned, Strine has a contract with an elevator maintenance company, and he submits undisputed evidence that repairs were made regularly. Defendant's motion, Exhibits A, B, Y, Z, AA. Thus, it does not seem that Strine failed to make a reasonable accommodation in his elevator maintenance for Mrs. Congdon's disability.

We are further fortified in our conclusion because of Strine's good faith effort to ac-commodate Mrs. Congdon by offering her occupancy in other apartments. Thus, we do not find discrimination pursuant to § 3604(f)(3).

*42 U.S.C. § 3617*

■ The Congdons also allege a violation of 42 U.S.C. § 3617. This statute provides:

[i]t shall be unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by section 3603, 3604, 3605, or 3606 of this title.

42 U.S.C. § 3617.

It is an issue of first impression in our Circuit whether a violation of § 3617 depends upon the validity of the underlying § 3604 claim. Other courts have equivocated on this point. *Compare, Michigan Protection and Advocacy Service, Inc. v. Babin,* 18 F.3d 337, 346, fn. 4 (6th Cir.1994) (where the court assumed "without deciding" that the § 3617 claim does not depend on the validity of the § 3604(f) claim), with *Metropolitan Hous. Dev. Corp. v. Village of Arlington Heights, supra* 558 F.2d at 1288, fn. 5 (where the court suggested that the general rule, possibly subject to exceptions, was that there must be a violation of § 3604(a) in order for a § 3617 claim to succeed).

Taking as a rule the assumption of the Sixth Circuit in *Michigan Protection and Advocacy Service, Inc.,* however, that Court rejected as too broad the view that "any action whatsoever that in any way hinders a member of a protected class under the fair housing law in obtaining housing is a *per se* violation of § 3617, so long as there is some evidence of discriminatory effect or intent on the actor's part." 18 F.3d at 347. Instead, the Sixth Circuit held "that the scope of § 3617 should at least be analogous to the scope of § 3604(f)." *Id.* "Under this standard, the language 'interfere with' encompasses such overt acts as racially-motivated firebombings ... sending threatening notes ... and less obvious, but equally illegal, practices such as exclusionary zoning ...

deflating appraisals because of discriminatory animus ... and insurance redlining ..." *Id.* (citations omitted).

The Congdons appear to contend that Strine's actions, particularly the threat of eviction after they filed complaints with various government agencies, constitute a violation of § 3617. Complaint at ¶¶ 22–23; Plaintiffs' Response at 16–18. It is undisputed that Strine did send the notice of eviction which occurred after plaintiffs had filed complaints with various agencies. But for such action to constitute a legal foul, there must be actual harm. Strine took no further action to evict, and later offered to rent the Congdons other apartments in buildings he owns. Given this absence of harm, we do not think Strine's one-time threat ran afoul of the Congdons' federal rights.

The Congdons fail to offer specific factual evidence showing that Strine in fact did anything to "interfere with" their rights. Although the Congdons may state a retaliation claim under state law, we do not believe Strine's notice regarding the end of a month-to-month tenancy gives rise to a violation of § 3617. Therefore, we will grant defendant's motion on the § 3617 claim as well.

*State Law Claims*

Plaintiffs also ask us to consider their state law claims. Because our subject matter jurisdiction rests exclusively on 28 U.S.C. § 1331, and we have found that plaintiffs' federal claims do not survive defendant's motion for summary judgment, we will decline to exercise supplemental jurisdiction under 28 U.S.C. § 1367(c)(3), and therefore will dismiss the state law claims without prejudice.

*ORDER*

AND NOW, this 24th day of May, 1994, upon consideration of defendant's motion for summary judgment, plaintiffs' response and defendant's reply, it is hereby ORDERED that:

1. Defendant's motion is GRANTED as to plaintiffs' claims under the Fair Housing Amendments Act of 1988, 42 U.S.C. § 3601, *et seq.;*

2. With respect to plaintiffs' claims under the Pennsylvania Human Relations Act, the Court declines to exercise its supplemental jurisdiction, and thus those claims are DISMISSED WITHOUT PREJUDICE;

3. JUDGMENT IS ENTERED in favor of defendant and against plaintiffs as to all federal claims; and

4. The Clerk of the Court shall CLOSE this case statistically.