Compensation Appeals Board
No. 94-360

## APPEAL OF ERLON ELLIOTT

### (New Hampshire Compensation Appeals Board)

January 31, 1996

*Cooper, Hall, Whittum & Shillaber, P.C.*, of Rochester (*Daniel J. Harkinson* on the brief and orally), for the claimant.

*Sulloway & Hollis,* of Concord (*W. Kirk Abbott, Jr.* on the brief and orally), for the respondents, Facemate, Inc. and CNA Insurance Companies, Inc.

BROCK, C.J. The claimant, Erlon Elliott, appeals the decision of the compensation appeals board (board) reducing his workers' compensation benefits from temporary total disability benefits to diminished earning capacity rate benefits. We reverse and remand.

The claimant suffered a repetitive trauma injury to his wrists during 1986 while employed by respondent Facemate, Inc. Facemate and its insurance carrier, respondent CNA Insurance Companies, Inc. (CNA), voluntarily began paying temporary total disability benefits shortly thereafter. With the exception of a brief period in 1986, the claimant continued to receive temporary total disability benefits until the order in this case and had not returned to work.

In 1988, the department of labor rendered a decision making a permanent partial impairment award to the claimant based on his injuries. As part of that decision, the department calculated the claimant's "correct temporary total disability rate." Neither party appealed this decision.

In 1992, the respondents requested a review of the claimant's eligibility for benefits. The department of labor did not act upon this request because it failed to include new medical documentation indicating a change in the claimant's medical condition. In February 1993, the respondents renewed their request for review, submitting a medical evaluation rendered after the 1992 request that, according to the request, was "consistent" with medical evaluations performed in 1987.

In its reply to the February 1993 request, the department of labor noted there was limited new medical information, and asked the respondents to forward "all new medical reports and '*specifically*' refer to the reports that [the respondents] feel indicate a '*change in condition.*'" In March 1993, the respondents replied, stating that

> [t]here are no new medical reports in this case. You are correct in your observation that the most recent medical exam was conducted on April 14, 1992. However, . . . I believe that the report of Dr. O'Neil is sufficient for the Department of Labor to take action under the unique circumstances of this case.

The reply then referred to the April 1992 medical evaluation, reviewed by Dr. O'Neil, which concluded:

> At this time based on this evaluation, it is difficult to assess the patient's status secondary to the many inconsistencies

that were seen. Based on the presentation on this date the patient appears to have at least a minimal work capacity. The patient may be a candidate for a work capacity evaluation to further delineate any inconsistencies.

The letter concluded by repeating the respondents' position that the 1992 report was "consistent with an earlier report" that had previously been rendered, and by noting that "[b]oth these reports indicate Mr. Elliott is capable of light duty work."

The department of labor held a hearing in May 1993. The hearing officer held that the claimant bore the burden of proving continued disability, and concluded that the claimant failed to meet this burden, noting that he had "been released to some degree of work capacity since 1988." The officer stated:

Based upon the ruling that the claimant, who is requesting benefits, bears the burden of proving entitlement to those benefits, the complete lack of medical justification for ongoing medical disability, and the serious question as to whether the claimant presented a sincere effort when an attempt was made to test his capacity, disability benefits are terminated . . . .

The claimant appealed to the board, which held a *de novo* hearing. The board agreed with the hearing officer's conclusion regarding the burden of proof. Further, the board concluded that "no determination regarding continuing eligibility for compensation and extent of disability ha[d] ever been rendered by the Department of Labor prior to the decision appealed from." Therefore, it took "the view that any change in condition from the time the carrier accepted the claim may be considered . . . in reaching its determination." The board found the claimant no longer temporarily totally disabled and awarded him compensation at the diminished earning capacity rate based on its conclusion that he had "a sedentary to light-duty work capacity."

On appeal, the claimant contends that the respondents should have been required to bear the burden of proving a change in condition and that the board erred in considering evidence of the claimant's condition prior to the department of labor's 1988 decision. Because we agree with the claimant on these points, we need not address his other arguments.

To succeed on appeal, the claimant bears the burden of demonstrating that the board's decision is unlawful or unreasonable. RSA 541:13 (1974); *see Appeal of Gamas*, 138 N.H. 487, 490, 642 A.2d 925, 927 (1994). We will not disturb the board's findings of fact if they are

supported by competent evidence in the record, although we will reverse for an error of law. RSA 541:13; *see Appeal of Lambrou*, 136 N.H. 18, 20, 609 A.2d 754, 755 (1992).

RSA chapter 281-A authorizes any party, whether claimant, employer, or insurer, to petition the department of labor to review a denial or an award of compensation. RSA 281-A:48, I (Supp. 1995). A party may make such a petition "upon the ground of a change in conditions, mistake as to the nature or extent of the injury or disability, fraud, undue influence, or coercion." *Id.*

██ Although they concede that the hearing in the instant case was held pursuant to RSA 281-A:48, the respondents argue that they had no obligation to demonstrate a change in conditions because there was no previous "Department decision" entitling the claimant to temporary total disability benefits. We disagree. For purposes of review under RSA 281-A:48, "an agreement between an insurance carrier and an injured party that benefits are payable has the same legal effect as an award for purposes of interpreting the statute." *Coulombe v. Noyes Tire Co.*, 125 N.H. 765, 767, 484 A.2d 1220, 1221 (1984) (applying prior law); *see* N.H. ADMIN. RULES, Lab 506.02(b) (where insurance carrier voluntarily has paid benefits for longer than three weeks, it "may request relief as provided by RSA 281-A:48"). Accordingly, even if we were to agree with the respondents' argument that the 1988 department of labor decision granting a partial permanent impairment award and calculating the claimant's "correct temporary total disability rate" was not a "decision" regarding the claimant's entitlement to temporary total disability payments, we would conclude that the respondents' voluntary continuation of payment of such benefits constituted a "decision" for purposes of the review hearing. *Coulombe*, 125 N.H. at 767, 484 A.2d at 1221.

██ The respondents concede that when a petition for a hearing, pursuant to RSA 281-A:48, is predicated upon a "change in conditions," the petitioner, claimant or workers' compensation insurer, has the burden of demonstrating such a change. We agree. "The burden of proof of showing a change in condition is normally on the party, whether claimant or employer, asserting the change, although, in some cases, the burden may shift to the other party once the movant has established his case." 3 A. LARSON, THE LAW OF WORKMEN'S COMPENSATION § 81.33(c), at 15-1194.32 to 15-1194.42 (1995) (footnotes omitted); *see Johnson v. Aetna Life & Casualty Co.*, 131 N.H. 698, 702, 559 A.2d 838, 841 (1989) (burden of proof on the movant who seeks to increase or decrease award under

predecessor to RSA 281-A:48). The board erred to the extent it ruled otherwise.

Regardless of its ruling on the burden of proof, the board found a change in the claimant's condition. The board considered the 1988 department of labor decision, which calculated the claimant's "correct temporary total disability rate," to be irrelevant to its decision, and considered "any change in condition from the time the carrier accepted the claim." This was erroneous.

█ In the 1988 decision, the fact of the claimant's temporary total disability was not in dispute. RSA 281-A:48 hearings are appropriate to review "a denial or an *award* of compensation." RSA 281-A:48, I (emphasis added). The hearing officer stated the issues of the 1988 hearing as (1) "calculation of average weekly wage," (2) "medical, hospital and remedial care," and (3) "scheduled permanent impairment award." In his decision, the hearing officer ordered the respondent CNA to submit a corrected memo of payment indicating that it compensated the claimant at "a correct temporary total disability rate." The company complied. This memo, and the respondents' continuing payment of temporary total disability benefits, were in effect a recognition that the claimant was temporarily totally disabled at the time of the 1988 hearing. *Cf. Croteau v. Harvey & Landers*, 99 N.H. 264, 266, 109 A.2d 553, 554 (1954) (memorandum of agreement regarding compensation, once filed, is enforceable) (applying prior law); RSA 281-A:41 (Supp. 1995) (No payment of benefits "shall in any way prejudice the rights of an employer in any dispute regarding . . . whether or not an injury . . . arose out of and in the course of an employee's service.").

Accordingly, the board should have limited its evidentiary inquiry into the suggested change in condition to evidence of the claimant's medical condition since the 1988 hearing. The board expressly considered evidence of a 1987 medical examination. We cannot guess what conclusion the board would have reached had it limited itself to the proper scope of evidence and properly allocated the burden of proof. Accordingly, we reverse and remand the matter to the board for proceedings consistent with this opinion.

*Reversed and remanded.*

BRODERICK, J., did not sit; BATCHELDER, J., retired, sat by special assignment under RSA 490:3; HORTON, J., with whom THAYER, J., joined, concurred specially; the others who sat concurred.

HORTON, J., concurring specially: Although I concur in the result mandated in the majority opinion, I do so based on the board's

allocation of the burden of proof and my uncertainty as to whether that allocation may have been crucial to the board's determination of benefit status. I do not agree, however, that evidence of the claimant's medical condition arising from the 1987 medical examination should be unavailable to the board in its decision on remand. The majority would exclude that evidence based on the preclusive effect of a 1988 hearing award determining the appropriate *amount* of compensation for temporary total disability, appropriate medical, hospital and remedial care, and propriety of a scheduled permanent impairment award. The majority concludes that this award, and the carrier's acceptance of the award, cast the temporary total disability status of the claimant in stone as of the date of the award, and make evidence of his limited work capacity prior to that date irrelevant.

There are two reasons why this should not be so. The issue before the board is whether the claimant's current status. is one of temporary total disability or one of diminished earning capacity. There is no issue as to when a change of status took place, since there is no claim for retroactive adjustment of benefits. Thus, all evidence that is relevant to the issue of current status should be allowed. There is no preclusive effect of any determination of status, either by award or through consent. It is uncontested that at the time of award or consent, the claimant was entitled to temporary total disability benefits whether or not he had a total disability. Evidence of the absence of a total disability at the time of award or consent may still be relevant to the issue of whether the claimant is totally disabled at this time. RSA 281-A:48, III (Supp. 1995) calls for medical evidence of capacity to work without limiting such evidence to post-determination evidence.

Nor, should some preclusive res judicata, collateral estoppel, or plain estoppel effect be divined from an award or consent to status, would I hold that the 1988 hearing award, and its acceptance by the carrier, triggered such preclusion. The 1988 hearing was not concerned with status in any respect. *See Petition of Gilpatric*, 138 N.H. 360, 363, 639 A.2d 267, 269 (1994). Beyond issue preclusion, there is even less justification for evidence preclusion. *See Olivieri v. City of Bridgeport*, 10 A.2d 770, 772 (Conn. 1940).

I would allow the board to consider any evidence relevant to the current work status of the claimant.

THAYER, J., joins in the special concurrence.