Belknap
No. 97-151

Compensation Appeals Board
No. 97-414

## JAMES D. MCKAY

v.

## NEW HAMPSHIRE COMPENSATION APPEALS BOARD & a.

## APPEAL OF JAMES D. MCKAY

(New Hampshire Compensation Appeals Board)

July 8, 1999

*Law Offices of David J. KillKelley*, of Laconia (*David J. KillKelley* on the brief and orally), for the petitioner, James D. McKay.

*Sulloway & Hollis, P.L.L.C.*, of Concord (*Martin L. Gross* and *Timothy A. Gudas* on the brief, and *Mr. Gross* orally), for the

respondents, Katie Flo's Cafe, Inc. and Liberty Mutual Insurance Company.

*Philip T. McLaughlin,* attorney general (*Douglas N. Jones,* assistant attorney general, on the brief), for the State of New Hampshire, as *amicus curiae.*

BRODERICK, J. In these consolidated cases, the petitioner, James D. McKay, appeals the Superior Court's (*Perkins,* J.) dismissal of his petition for injunctive relief and writ of mandamus, and the New Hampshire Compensation Appeals Board's (CAB) decision reducing his benefits. He argues that certain provisions of the Workers' Compensation Law, RSA chapter 281-A, violate the State Constitution because they deprive him of an impartial, judicial tribunal, and that the CAB's decision contains legal and factual error. We affirm the superior court, and although we hold that the challenged provisions of the Workers' Compensation Law are constitutional, we reverse the CAB's decision and remand.

I

In June 1994, while working for Katie Flo's Cafe,. Inc. as a dishwasher, the petitioner slipped, fell, and fractured his right hip. Liberty Mutual Insurance Company (Liberty Mutual), which insures the cafe, voluntarily paid the petitioner temporary total disability benefits. In March 1996, Liberty Mutual successfully petitioned the department of labor (DOL) to reduce the petitioner's benefits to the diminished earning capacity rate. The DOL also ordered that the petitioner receive ten weeks of vocational rehabilitation services. He appealed the reduction in benefits to the CAB for a *de novo* review, *see* RSA 281-A:43, I(b) (Supp. 1998), while Liberty Mutual filed no appeal from the vocational rehabilitation award.

Prior to the CAB merits hearing, however, the petitioner sought a declaratory judgment and writ of mandamus in superior court, requesting it to hear his workers' compensation appeal due to alleged constitutional infirmities in the Workers' Compensation Law. The trial court dismissed the petitioner's action, reasoning that he had adequate alternative relief before the CAB, including an appeal to the supreme court. The petitioner appealed the court's decision.

Following its hearing, the CAB determined that the evidence supported a reduction in the .petitioner's benefits and rejected his various constitutional attacks on the Workers' Compensation Law.

The petitioner's motion for rehearing was denied, and he appealed. Consolidated superior court and CAB appeals are now before us.

On appeal, the petitioner challenges the constitutionality of certain provisions of the Workers' Compensation Law and the merits of the CAB's decision reducing his benefits. Because the trial court never addressed the constitutional claims and dismissed them on other grounds not appealed by the petitioner, we affirm its decision. Accordingly, we review only the issues raised before the CAB and preserved for appellate review.

## II

The petitioner argues that RSA 281-A:42-a, which establishes the compensation appeals board and its powers, violates both Part I, Article 37 and Part 2, Article 73 of the State Constitution by requiring adjudication of his compensation claim by the board, rather than by a judicial tribunal. He does not contend that the entire workers' compensation scheme is unconstitutional, but rather seeks judicial resolution of his underlying claim and application of the remainder of the Workers' Compensation Law, including no-fault liability and scheduled economic benefits.

A brief history of the Workers' Compensation Law provides valuable context for the petitioner's constitutional challenges. The act was first enacted in 1911 "[i]n recognition of the burdens, delays, inadequate relief and unequal operation of law inherent in common law remedies." *Thompson v. Forest*, 136 N.H. 215, 217, 614 A.2d 1064, 1066 (1992). "One of the more important aims of [the act was] to secure to the injured [employee] . . . compensation by direct payments under certain fixed rules without a law-suit and without friction . . . by a procedure at once simple and inexpensive." *Mulhall v. Company*, 80 N.H. 194, 200, 115 A. 449, 453 (1921) (quotations and citations omitted). Accordingly, the act provides for no-fault liability with scheduled statutory compensation for work-related injuries and disabilities that affect earning capacity. *Bilodeau v. Oliver Stores, Inc.*, 116 N.H. 83, 86, 352 A.2d 741, 743-44 (1976).

Until 1959, the act permitted employees to elect between pursuing compensation under its terms or through a common law tort action. The legislature then amended the act to create a conclusive presumption that employees accepted its coverage and waived their common law right to seek personal injury damages against their employers. Laws 1959, 187:4; *see Park v. Rockwell Int'l Corp.*, 121 N.H. 894, 896, 436 A.2d 1136, 1137 (1981). This statutory presump-

tion remains in effect. *See* RSA 281-A:8 (Supp. 1998). Until 1990, employees were entitled to seek a *de novo* review of their claims in the· superior court. *Compare* RSA 281:37, I (1987) (repealed 1988) *and* Laws 1988, 194:2 *with* Laws 1990, 254:28. The 1990 amendment to ˙the Workers' Compensation Law, however, eliminated *de novo* review by the superior court and replaced it with *de novo* review by the CAB. Laws 1990, 254:28, :29; *see also* RSA 281-A:42-a, I, :43, I(b) (Supp. 1998). Whether the 1990 amendment is constitutional is a matter of first impression.

Before turning to the specific constitutional provisions at issue, we clarify the nature of the petitioner's exception to the 1990 amendment. The petitioner argues that the amendment violates his constitutional right to judicial resolution of his compensation claim, including its legal and factual components. The actual effect of the amendment, however, is to deprive him of judicial resolution of only the facts underlying his workers' compensation claim because he still may seek *de novo* judicial review of its legal components. *See* RSA 281-A:43, I(c) (Supp. 1998); RSA 541:13 (1997). Therefore, we review whether the failure of the Workers' Compensation Law to provide for judicial fact-finding for workers' compensation claims violates the constitutional provisions raised by the petitioner.

■■ The petitioner initially argues that RSA 281-A:42-a violates Part I, Article 37 of our State Constitution. This provision states:

> In the government of this state, the three essential powers thereof, to wit, the legislative, executive, and judicial, ought to be kept as separate from, and independent of, each other, as the nature of a free government will admit, or as is consistent with that chain of connection that binds the whole fabric of the constitution in one indissoluble bond of union and amity.

Despite Part I, Article 37's admonition on the separation of powers, we have recognized that "the doctrine does not require an absolute division of powers, but a cooperative accommodation among the three branches of government," *Opinion of the Justices (Prior Sexual Assault Evidence)*, 141 N.H. 562, 569, 688 A.2d 1006, 1010 (1997), and "contemplates some overlapping and duality in the division as a matter of practical and essential expediency," *Cloutier v. State Milk Control Board*, 92 N.H. 199, 203, 28 A.2d 554, 557 (1942). "[T]here is a region of authority, alternative and concurrent, the boundaries of which are fixed by no final rule." *Opinion of the*

*Justices,* 87 N.H. 492, 493, 179 A. 357, 359 (1935). With respect to the judicial branch, resolving "questions of legal right" and "the function of trying and deciding litigation is strictly and exclusively" its domain. *Id.* at 493, 495, 179 A. at 359, 360. The legislature, however, acts within its constitutional authority when it empowers an administrative body to resolve factual issues underlying a purely statutory right. *See Pomponio v. State,* 106 N.H. 273, 274-75, 209 A.2d 733, 734-35 (1965).

It is well-settled that the rights and remedies provided by the Workers' Compensation Law are purely statutory. *Bilodeau,* 116 N.H. at 87, 352 A.2d at 744. Contrary to the petitioner's assertion that the act only changes the remedy, or method of recovery, of common law tort liability to statutory no-fault liability with limited economic compensation, the Workers' Compensation Law also supplants the redress, or compensation, available to injured employees. *See id.* at 86, 352 A.2d at 744 (workers' compensation law compensates only for injuries which produce disability which presumably affects earning power); *Mulhall,* 80 N.H. at 197, 115 A. at 452 (compensation under the act is in no sense to be considered as damages). The nature and extent of this redress "is governed by the express statutory language and that which can be fairly implied therefrom." *Bilodeau,* 116 N.H. at 87, 352 A.2d at 744.

The petitioner contends that workers' compensation claims are not purely statutory. He argues that because the rights of employees to bring common law tort claims against employers existed when the State Constitution was ratified in 1784, their right to judicial redress against employers for bodily injury was preserved by the constitution. He, therefore, concludes that he is constitutionally entitled to judicial resolution of the facts underlying his claim as it seeks redress for bodily injury against his employer. The petitioner, however, is not seeking common law redress for his injury, but rather statutory redress provided by the Workers' Compensation Law. "Unlike tort actions, no damages or compensation are awarded [under the act] for pain and suffering, disfigurement as such, loss of consortium, and other elements of common law damages." *Id.* at 86-87, 352 A.2d at 744. Furthermore, the legislature's general authority to create statutory redress or compensation that substitutes for common law redress or compensation, without a constitutional amendment, is beyond dispute. *See Park,* 121 N.H. at 898, 436 A.2d at 1138 (generally, workers' compensation laws pass constitutional muster on due process grounds because they provide *quid pro quo* for tort victims whose rights of actions are supplanted by statute).

■ The petitioner places great weight on prior versions of the Workers' Compensation Law that permitted employees to elect between workers' compensation coverage and their common law right to sue their employers, *see Thompson*, 136 N.H. at 217, 614 A.2d at 1066, and enabled employees to seek *de novo* fact-finding by the superior court, *see* RSA 281:37, I. Such prior options, however, do not change the conclusion that the Workers' Compensation Law is a purely statutory substitution of common law rights, remedies, and redress available to injured employees. *Bilodeau*, 116 N.H. at 86, 352 A.2d at 743 (workers' compensation law is statutory substitute for common law tort action); *Park*, 121 N.H. at 898, 436 A.2d at 1138 (same). Because the petitioner seeks redress or compensation for his bodily injury pursuant to the Workers' Compensation Law, a purely statutory right, *see Bilodeau*, 116 N.H. at 87, 352 A.2d at 744, and does not challenge the constitutionality of the workers' compensation scheme in its totality, *but see Park*, 121 N.H. at 898, 436 A.2d at 1138 (workers' compensation law generally passes constitutional muster due to *quid pro quo* exchange of rights), we conclude that the act's compelled adjudication of the underlying facts by an administrative body does not offend the separation of powers doctrine embodied in Part I, Article 37. *Compare Pomponio*, 106 N.H. 273, 209 A.2d 733 (statute authorizing commissioner to determine entitlement to *statutory* unemployment benefits, including resolution of factual disputes, did not violate separation of powers doctrine) *with Opinion of the Justices*, 87 N.H. 492, 179 A. 357 (proposed statute that would empower commissioner to decide motor vehicle *common law* negligence claims would violate separation of powers doctrine).

■ The petitioner also argues that RSA 281-A:42-a violates Part II, Article 73 because it provides for the appointment of CAB members who are not judges and serve four-year terms rather than life-time appointments. He contends that only judicial officers with life tenure can render a final judgment.

Part II, Article 73 states in pertinent part:

> [A]ll judicial officers duly appointed, commissioned and. sworn, shall hold their offices during good behavior except those for whom a different provision is made in this constitution.

When the legislature gives decision-making authority to an administrative board without violating Part I, Article 37, that board has a "dual character" in which some of its acts "are within the legislative

or administrative area and others have the effect of a judgment." *Petition of Boston & Maine Corp.*, 109 N.H. 324, 327, 251 A.2d 332, 335 (1969). Such an administrative board is permitted to resolve issues of fact, *see Pomponio*, 106 N.H. at 275, 209 A.2d at 734-35; *Cloutier*, 92 N.H. at 202-03, 28 A.2d at 557, and render a decision affecting private rights that has "the same force of obligation and finality as a judicial one," *Petition of Boston & Maine Corp.*, 109 N.H. at 327, 251 A.2d at 336 (quotation omitted). Accordingly, the petitioner's contention that the composition of the CAB violates Part II, Article 73 because the members are not duly appointed judicial officers serving life terms lacks merit and warrants no further discussion.

Finally, in his reply brief, the petitioner argues for the first time that RSA 281-A:42-a violates the due process and equal protection provisions of the State Constitution. Because he failed to address these constitutional arguments in his initial brief, we deem them waived. *See Panas v. Harakis & K-Mart Corp.*, 129 N.H. 591, 617-18, 529 A.2d 976, 992 (1987).

## III

The petitioner argues that RSA 281-A:42-a, I, which mandates the composition of the CAB, violates the State Constitution by compelling him to appear before inherently biased board members. He identifies a two-fold bias. First, he asserts that two of the three CAB members who, as required by the statute, "represent[] labor" and "represent[] employers or workers' compensation insurers," RSA 281-A:42-a, I (Supp. 1998), are influenced by their respective connection to organized labor and employers or insurance carriers. Second, he argues that all three board members, the third being an attorney, *see id.*, "have a financial interest in creating a work load which may grow if each makes decisions favorable to insurance carriers." We find neither assertion persuasive.

"Administrative officials [who] serve in an adjudicatory capacity are presumed to be of conscience and capable of reaching a just and fair result." *Appeal of Dell*, 140 N.H. 484, 492, 668 A.2d 1024, 1032 (1995) (quotation omitted). "The burden is upon the party alleging bias to present sufficient evidence to rebut this presumption." *Id.* (quotation omitted). Hence, the burden is on the petitioner to demonstrate that a particular CAB member has a disqualifying interest in his case, *i.e.*, "a direct personal or pecuniary interest that is immediate, definite, and capable of demonstration," or a "connection with the parties in interest, as would be likely, improperly, to

influence his or her judgment." *Appeal of Hurst*, 139 N.H. 702, 704, 660 A.2d 1143, 1144-45 (1995) (quotation and brackets omitted).

We fail to appreciate how the CAB members' general connection to labor, employers, or insurance carriers creates a bias *per se*. While RSA 281-A:42-a, I, requires one CAB member to "represent" labor and another to "represent" employers or workers' compensation insurers, it would be improvident to conclude that the statute required such members to affirmatively advocate a particular position when rendering a decision on a claim before them. The statute cannot fairly be read to establish a tribunal that by its very composition is incapable of impartial judgment. *See generally Appeal of Murray*, 142 N.H. 910, 913, 714 A.2d 222, 224 (1998) (court will not interpret workers' compensation statute to lead to absurd result). The composition of the CAB was no doubt designed to enhance its appearance as an impartial body, not undercut it. Interpreting the statute as the petitioner invites would directly conflict with its mandate:

> No person who is an interested party or an employee of an interested party shall participate as a member of the panel. The board shall conduct its proceedings in such a manner as to ensure a fair and impartial hearing.

RSA 281-A:42-a, I; *see generally Sprague Energy Corp. v. Town of Newington*, 142 N.H. 804, 806, 710 A.2d 1005, 1006 (1998) (statutes should be construed so that they do not contradict each other). Therefore, the petitioner's general allegation of bias lacks merit.

Further, the petitioner summarily asserts that the CAB members have a financial interest, presumably through per diem compensation, "in creating a work load which may grow if each makes decisions favorable to insurance carriers." We fail to discern, and the petitioner fails to demonstrate, how per diem compensation creates a bias in favor of one party over another. Additionally, the petitioner does not allege that any particular CAB member who decided his claim had a disqualifying pecuniary interest. *See Appeal of Hurst*, 139 N.H. at 704, 660 A.2d at 1144-45. His summary allegation of inappropriate financial interest, standing alone, will not sustain a claim of bias. Due to the cursory nature of his argument, we will not consider it further. *Cf. Fothergill v. Seabreeze Condos.*, 141 N.H. 115, 118, 677 A.2d 696, 698 (1996).

■ Absent demonstrated prejudice caused by a board member's personal or pecuniary interest in his case, the petitioner's general allegations of compositional bias fail, and the alleged constitutional violations likewise fail.

## IV

The petitioner advances several arguments attacking the merits of the CAB's decision reducing his benefits. He first argues that the hearing officer's unappealed decision that he was entitled to vocational rehabilitation conclusively determined his incapacity to work and thus his status as temporarily totally disabled. We reject this argument.

This court is the final arbiter of the meaning of a statute, *Linteau v. Gauthier*, 142 N.H. 460, 461, 703 A.2d 266, 267 (1997), as expressed by the words in the statute itself, *Sprague Energy Corp.*, 142 N.H. at 806, 710 A.2d at 1006. We interpret a statute to lead to a reasonable result and review a particular provision, not in isolation, but together with all associated sections. *Id.*

Under the act, an injured employee is entitled to temporary total disability benefits after "sustaining a personal injury which is totally disabling, but temporary in nature, and the employee is *unable to return to work,* but has not achieved maximum medical improvement." RSA 281-A:28 (Supp. 1998) (emphasis added). Such benefits, however, may be subsequently reduced if a "change in conditions" demonstrates that the injured employee "is physically able to perform his or her regular work or is able to engage in gainful employment." RSA 281-A:48, I, II(b), III (Supp. 1998).

An employee is entitled to vocational rehabilitation services when "as a result of an injury covered by [the act], an employee is *unable to perform work for which he or she has previous training or experience.*" RSA 281-A:25, I (Supp. 1998) (emphasis added). While the hearing officer must have determined that the petitioner was "unable to perform work for which he . . . [had] previous training or experience" to award him vocational rehabilitation services, this finding does not conclusively establish that he was also "unable to return to work" in accordance with temporary total disability status under RSA 281-A:28, I. The finding is equally consistent with partial disability status in which an employee is "able to return to work," RSA 281-A:31, :31-a (Supp. 1998), but perhaps not the "work for which he or she [had] previous training or experience," RSA 281-A:25, I. The purpose of providing an injured employee vocational rehabilitation services is "to restore such employee to suitable employment" and "to render the employee fit for a remunerative occupation." RSA 281-A:25, I. By its statutory terms, such services could be awarded, and would reasonably benefit, those injured employees who are temporarily totally disabled and thus are "unable to return to work," as well as those who

are partially disabled and thus "able to return to work" but not necessarily in their full or former capacity. Accordingly, the hearing officer's unappealed award of vocational rehabilitation benefits is not conclusive of a temporarily totally disabled status.

## V

The petitioner argues that the CAB wrongfully placed the burden on him to prove his continuing eligibility for temporary total disability benefits. He asserts that *Appeal of Elliot*, 140 N.H. 607, 675 A.2d 204 (1996), provides that the party requesting a hearing predicated upon a "change in conditions" under RSA 281-A:48, the respondents in this case, bears the burden of proving such change. He thus contends that the CAB erred as a matter of law when it ruled that "[o]nce the carrier has shown a change in circumstances, the burden of proving he is eligible for benefits shifts back to the Claimant."

Under RSA 281-A:48, I, "any party at interest . . . may petition the commissioner to review . . . an award of compensation . . . upon the ground of a change in conditions," and as a result, the commissioner can enter an order diminishing the compensation previously paid, *see* RSA 281-A:48, II(b). In *Appeal of Elliot*, we placed the burden of proving a "change in conditions" on the party asserting the change, and the respondents do not dispute that they were obliged to satisfy this burden. They contend, however, that the general rule created by *Appeal of Elliot* includes a burden shift to the claimant to show "continuing entitlement to total disability benefits." The respondents' interpretation of *Appeal of Elliot*, however, is incorrect.

In *Appeal of Elliot*, we stated:

> The burden of proof of showing a change in condition is normally on the party, whether claimant or employer, asserting the change, although, *in some cases*, the burden *may* shift to the other party once the movant has established his case.

*Appeal of Elliot*, 140 N.H. at 610, 675 A.2d at 206 (quotation omitted and emphasis added). We thereby established that as a *general rule*, the burden of proof remains on the moving party to show a change in condition, and merely alluded to the *possibility* of *exceptions*, which were not present or at issue in that case. The respondents do not point to any circumstances in this case, or cite supporting legal authority, to warrant our consideration of an exception to the

general rule. Therefore, we review the CAB's decision under the general rule established by *Appeal of Elliot.*

■ In the analysis portion of the CAB's order entitled "DECISION," it stated that

> *the carrier* has presented sufficient evidence of change in conditions since the claimant's work related injury in 1994 to support a reduction in benefits from temporary total disability to the diminished earnings capacity rate.

(Emphasis added.) In denying a number of the petitioner's requests for findings and rulings, however, the CAB stated:

> Once the carrier has shown a change in circumstances, *the burden of proving he is eligible for benefits shifts back to the claimant. Here the claimant has not [met] the burden.*

(Emphasis added.) Therefore, while the CAB correctly placed the burden of proving a change in condition or circumstances on the respondents, the latter statement reveals that it believed the petitioner bore some burden of proof on the ultimate issue before it, *i.e.*, the respondents' requested reduction in benefits. This approach conflicts with the general rule under *Appeal of Elliot.* Moreover, the CAB did not identify any circumstances that warrant an exception to the general rule. Accordingly, we reverse the CAB on this issue and remand.

Because we remand this matter for a new hearing, we need not address the petitioner's remaining arguments that the CAB failed to recognize his specific work restrictions or failed to consider whether there was a reasonably stable labor market for his abilities.

> *Decision of the superior court is affirmed; decision of the compensation appeals board is reversed and remanded.*

All concurred.