Public Employee Labor Relations Board
No. 98-374

APPEAL OF NEW HAMPSHIRE TROOPERS ASSOCIATION

(New Hampshire Public Employee Labor Relations Board)

October 5, 2000

*Donchess & Notinger, P.C.*, of Nashua (*James W. Donchess* on the brief and orally) for the petitioner, New Hampshire Troopers Association.

*Philip T. McLaughlin*, attorney general (*Philip B. Bradley*, attorney, on the brief and orally) for the respondent, the State of New Hampshire.

BRODERICK, J. The petitioner, New Hampshire Troopers Association, appeals from a decision of the New Hampshire Public Employee Labor Relations Board (PELRB) ruling that the respondent, the State of New Hampshire, did not commit an unfair labor practice by unilaterally and without cause eliminating corporal rank for approximately fifty State troopers. We affirm.

I

The following facts either were found by the PELRB or are not otherwise disputed. The State, through its department of safety, is the public employer of the State police. *See* RSA 273-A:1, X (1999). The association is the duly certified bargaining agent for sworn personnel employed by the New Hampshire Division of State Police (the division) up to and including the rank of sergeant. During the relevant time period, the parties were bound by a collective bargaining agreement that did not address the issue of rank.

In October 1992, the State, acting through the division of personnel, restructured the classification system of the State police,

resulting in the following structure: sergeant, labor grade 21; supervisory or "hard" corporal, labor grade 19; upgraded or "soft" corporal, labor grade 19; trooper, labor grade 17; and trooper-trainee, labor grade 13. Both supervisory or hard corporals and upgraded or soft corporals received identical pay and benefits. Hard corporals were promoted on merit to fill existing supervisory vacancies while soft corporals received promotions after ten years of service if otherwise qualified. Soft corporals, however, generally did not serve in a daily or full-time supervisory capacity, but performed supervisory tasks only on an as-needed basis unless and until the corporals were transferred to a supervisory or hard corporal position that became vacant.

In October 1996, the association and the division formed a committee to address problems within the existing rank system, including the inequity of nonsupervisory soft corporals receiving pay identical to hard corporals. As a result, in February 1997, the director of personnel approved the first phase of a new rank system. The structure provided the following positions: sergeant, labor grade 22; sergeant, labor grade 21; corporal, labor grade 20; trooper II, labor grade 19; trooper I, labor grade 17; and probationary trooper, labor grade 13. Under the new system, hard corporals retained the title of corporal and received a salary grade increase to labor grade 20. Soft corporals were renamed trooper II's and remained at labor grade 19. While approximately fifty soft corporals lost their titles and had to remove corporal insignia from their uniforms, it is undisputed that their pay, benefits, and job duties remained unchanged. It is also undisputed that the rank change was not associated with any misconduct by the affected officers.

In August 1997, the association filed a complaint with the PELRB charging the State with an unfair labor practice because it refused to bargain its decision to eliminate the rank of corporal for certain officers which, the association argued, demoted them without cause. After an evidentiary hearing, the PELRB ruled that because soft corporals suffered no reduction in pay or benefits or change in labor grade, the change in rank to trooper II was not a demotion but a reclassification exclusively within managerial prerogative. It also ruled that rank was not a working condition subject to collective bargaining. After moving unsuccessfully for rehearing, the association appealed.

When reviewing a decision of the PELRB, "[w]e defer to [its] findings of fact, and, absent an erroneous ruling of law, we will not set aside [its] decision unless the [appealing party] demonstrates by a clear preponderance of the evidence that the order is unjust or

unreasonable." *Appeal of City of Nashua Bd. of Educ.*, 141 N.H. 768, 772, 695 A.2d 647, 650 (1997) (quotation omitted); *see* RSA 541:13 (1997). The association does not challenge the PELRB's findings of fact, and only argues that its decision is unjust or unreasonable.

## II

The association argues that the new rank system resulted in a demotion for certain officers from corporal to trooper II which, it contends, is prohibited by RSA 106-B:5 without just cause. It also argues that the authority of the division of personnel to create additional ranks and qualifications under RSA 106-B:4 cannot override the statutory protection afforded to officers under RSA 106-B:5. We are "the final arbiter of the meaning of a statute, as expressed by the words in the statute itself." *McKay v. N.H. Compensation Appeals Bd.*, 143 N.H. 722, 731, 732 A.2d 1025, 1032 (1999) (citations omitted). "We interpret a statute to lead to a reasonable result and review a particular provision, not in isolation, but together with all associated sections." *Id.* With this standard in mind, we turn to RSA 106-B:5.

The statute provides:

> Any police employee may be suspended, discharged or demoted by the director [of State police] for cause, with the approval of the commissioner of safety, but shall be entitled to a public hearing before discharge or demotion, but not suspension, if he so requests in writing addressed to the director [of State police] not later than 10 days after notice of said discharge or demotion.

RSA 106-B:5 (1990). Under this provision, the director of State police has the authority to, among other things, demote a police employee for cause. Demotion, however, is not defined within the governing statutory chapter. *See* RSA 106-B:1 (1990). The PELRB adopted the definition of demotion contained in the personnel rules. There, demotion is defined as the "transfer of an employee from [one] position to another . . . having a lower salary grade." N.H. ADMIN. RULES, Per 101.20 (1992) (repealed 1998). We need not, however, decide whether the personnel rules govern the meaning of demotion under RSA 106-B:5, nor must we discern the exact parameters of that term to conclude the matter before us. Under a plain meaning analysis, "demotion" anticipates, at a minimum, some reduction in job duties, pay, or benefits, *see* WEBSTER'S THIRD

NEW INTERNATIONAL DICTIONARY 601 (unabridged ed. 1961); BLACK'S LAW DICTIONARY 432 (6th ed. 1990), none of which occurred when soft corporal was changed to trooper II. *See Appeal of Alley*, 137 N.H. 40, 41, 623 A.2d 223, 223-24 (1993) (employees who incurred a change in job title and reduction of pay were demoted).

■ We reject the association's argument that RSA 106-B:4 (1990) dictates that demotion encompasses a reduction in or loss of rank, regardless of whether any change occurs in job responsibilities or benefits. This statutory provision establishes the skeletal rank structure of the State police by mandating a single position for the rank of colonel as well as a minimum number of positions for major, captain, lieutenant, sergeant, and corporal-at-large. RSA 106-B:4 requires the personnel commission to, among other things, "establish suitable classification for additional grades, positions and ranks." Thus, the division of personnel was expressly directed to devise additional grades and ranks as well as positions within such grades and ranks so as to complete the hierarchical structure for the State police. This authority necessarily required the division to employ its power under RSA chapter 21-I to establish classifications for positions based on the similarity of duties performed and responsibilities assumed and to devise correlating qualifications and pay schedules for different positions and classifications. *See* RSA 21-I:42, II (1988). The association itself acknowledges that rank signifies the extent of the officer's right, if any, to command other officers. *See* WEBSTER'S, *supra* at 1881; BLACK'S, *supra* at 1259. Therefore, rank under RSA 106-B:4 necessarily incorporates associated job duties and responsibilities as well as pay and benefits. Accordingly, the PELRB correctly ruled that the officers did not suffer a demotion in rank but a change in job title.

### III

The association next argues that rank, once awarded, constitutes a term or condition of employment that cannot be altered absent collective bargaining. The State contends that rank falls within the managerial policy exception under RSA 273-A:1, XI, and thus is a prohibited subject of bargaining.

"Terms and conditions of employment" subject to collective bargaining are defined as

> wages, hours and other conditions of employment other
> than managerial policy within the exclusive prerogative of

the public employer, or confided exclusively to the public employer by statute or regulations adopted pursuant to statute.

RSA 273-A:1, XI (1999). In turn, "managerial policy within the exclusive prerogative of the public employer" is defined under the statute to include but not be limited to

the functions, programs and methods of the public employer, including the use of technology, the public employer's organizational structure, and the selection, direction and number of its personnel, so as to continue public control of governmental functions.

RSA 273-A:1, XI. We employ the familiar three-part test articulated in *Appeal of State of N.H.*, 138 N.H. 716, 722, 647 A.2d 1302, 1306-07 (1994), to determine whether the State was obligated to negotiate its decision to change the rank of soft corporal to trooper II.

"First, to be negotiable, the subject matter of the proposed contract provision must not be reserved to the exclusive managerial authority of the public employer by the constitution, or by statute or statutorily adopted regulation." *Id.* at 722, 647 A.2d at 1306. "Second, the proposal must primarily affect the terms and conditions of employment, rather than matters of broad managerial policy." *Id.* "Third, if the proposal were incorporated into a negotiated agreement, neither the resulting contract provision nor the applicable grievance process may interfere with public control of governmental functions contrary to the provisions of RSA 273-A:1, XI." *Id.* at 722, 647 A.2d at 1307.

A matter that fails step one is a prohibited subject of bargaining. *Appeal of City of Nashua Bd. of Educ.*, 141 N.H. at 774, 695 A.2d at 651. A matter that satisfies step one but fails either step two or step three is a permissible topic of negotiations. *Id.* A matter that satisfies all three steps is a mandatory subject of collective bargaining. *Id.* RSA 106-B:4, as earlier discussed, establishes the basic rank structure of the State police and compels the director of personnel to "establish suitable classification for additional grades, positions and ranks and for each classification [to] fix standards of health, education, training and experience, as well as the conduct and manner of taking competitive examinations for promotion within the division." Therefore, by statute, the division of personnel retains the express and exclusive authority to determine the "grades, positions and ranks" that supplement the ranks and positions established by RSA 106-B:4. Accordingly, reorganization

of the rank structure, including altering the rank title retained by the former soft corporals, was a prohibited subject of bargaining.

*Affirmed.*

BROCK, C.J., sat for oral argument but did not take part in the final vote; THAYER, J., sat for oral argument but resigned prior to the final vote; HORTON, J., concurred; NADEAU and DALIANIS, JJ., who took part in the final vote by consent of the parties, concurred.