Merrimack
No. 99-395

### STEPHEN HYNES, AS TRUSTEE FOR HOLIDAY ACRES JOINT VENTURE TRUST d/b/a HOLIDAY ACRES MOBILE HOME PARK

v.

### KAREN D. HALE & a.

June 22, 2001

*Law Offices of John L. Allen and Associates, P.C.*, of Manchester (*Denis O. Robinson* on the brief, and *John L. Allen* orally), for the plaintiff.

New Hampshire Legal Assistance, of Claremont (*Patricia Wallace* on the brief, and *Kenneth Barnes* orally), for defendant Karen D. Hale.

*Philip T. McLaughlin*, attorney general (*Walter L. Maroney*, senior assistant attorney general, *& a.* on the brief, and *Mr. Maroney* orally), for the New Hampshire Board of Manufactured Housing.

DALIANIS, J. The plaintiff, Stephen Hynes, as Trustee of Holiday Acres Joint Venture Trust d/b/a Holiday Acres Mobile Home Park, appeals the Superior Court's (*McGuire*, J.) order affirming the decision of the New Hampshire Board of Manufactured Housing (board) regarding a park rule requiring the defendant, Karen D. Hale, to modify her fence. We affirm in part and reverse in part.

The following facts either were found by the board or appear in the record, and are not disputed by the parties on appeal. Hale is a tenant of Hynes' manufactured housing community. In April 1997, she purchased her manufactured housing unit from prior tenants. At the time of purchase, the unit was surrounded by a six-foot-high fence. Sometime thereafter, the fence fell into disrepair. To repair it, Hale replaced portions with six-foot-high fencing. In two notices of violation, issued in April and June 1998, Hynes notified Hale that the fence as repaired violated park rule 6(k), which requires all fences to be approved by park management and not exceed four feet in height. The notices informed Hale that she had to remove the new sections of fence and replace them with four-foot-high fencing. Hale did not comply with the notices and, accordingly, in July 1998, Hynes issued a notice to quit.

Hale then brought a complaint before the board, asserting that Hynes' enforcement of park rule 6(k) violated RSA 205-A:2, VIII(d) (2000), which restricts a manufactured housing park owner's ability to require a tenant to remove any personal property which the tenant had prior park owner permission to possess. Following a hearing, the board found that Hale had implied permission to maintain the fence at its original height because park management

had approved her purchase and sale agreement, which described the fence as property included in the purchase of the unit. Accordingly, the board ruled the fence was "grandfathered" at its original height. The board enjoined Hynes from requiring Hale to install replacement fencing of less than six feet and from taking any legal action against her based upon the contention that the fence violated park rule 6(k). Hynes moved for rehearing, which the board denied, and then appealed to the superior court, which affirmed the board's decision.

On appeal, Hynes argues that: (1) the statutes establishing the board violate the separation of powers doctrine set forth in the New Hampshire Constitution, see N.H. CONST. pt. I, art. 37; (2) the board's decision exceeded its jurisdiction because the issues raised in Hale's complaint were related to an eviction action; (3) the board erroneously found that park management had impliedly permitted Hale to maintain the fence's original height; and (4) the board erroneously issued injunctive relief.

■ The trial court's review of a decision of the board is governed by RSA 677:6 (1996). See RSA 205-A:28, II (2000). The appealing party has the burden of demonstrating to the trial court that the board's decision was unlawful or unreasonable. See Sundberg v. Greenville Bd. of Adjustment, 144 N.H. 341, 343 (1999). "We, in turn, will not disturb the trial court's determination if there is evidence upon which the court's decision reasonably could be based and it was not erroneous as a matter of law." Id. (citation omitted). "The standard of review for this court is not whether we would find as the trial court did but whether the evidence reasonably supports the finding." Mt. Valley Mall Assocs. v. Municipality of Conway, 144 N.H. 642, 647 (2000) (quotation omitted).

*I. Separation of Powers*

Hynes asserts that the legislation establishing the board conflicts with the separation of powers doctrine found in Part I, Article 37 of the New Hampshire Constitution. Because the constitutionality of a statute involves a question of law, we review the superior court's determination *de novo. Mt. Valley Mall Assocs.,* 144 N.H. at 648. "[We] will never declare a statute void unless the nullity and invalidity of the act are placed, in [our] judgment, beyond all reasonable doubt." *Petition of Boston & Maine Corp.,* 109 N.H. 324, 325 (1969) (quotation omitted). "However, if upon examination of the statute, there is a clear conflict with the Constitution the court must declare the statute inoperative because the Constitution, and not the statute, is the paramount law." *Id.* at 326 (quotation omitted).

We first examine RSA chapter 205-A, the statutory scheme related to regulation of manufactured housing parks. RSA chapter 205-A governs evictions of manufactured housing park tenants, unfair trade practices by manufactured housing park owners, health and safety conditions of manufactured housing parks and manufactured housing park rules. RSA chapter 205-A vests jurisdiction over evictions in district courts and jurisdiction over complaints of unfair practices and health and safety violations in the superior court. *See* RSA 205-A:9, :13-a, :15 (2000); *see also* RSA 540:13 (Supp. 2000); RSA 358-A:4, III (Supp. 2000).

Pursuant to RSA chapter 205-A, the board has jurisdiction to "hear and determine matters involving manufactured housing park rules, specifically RSA 205-A:2, RSA 205-A:7, and RSA 205-A:8." RSA 205-A:27 (2000); *see* RSA 205-A:12, :12-a (2000). The rules to which RSA 205-A:27 refers relate to manufactured housing park owner conduct. RSA 205-A:2 lists prohibitions related to what a manufactured housing park owner may require of tenants and lists mandates related to the notice of park rules that the owner must provide to tenants. RSA 205-A:7 prohibits a manufactured housing park owner from requiring a security deposit of more than one month's rent. RSA 205-A:8 prohibits a park owner from compelling a tenant to purchase manufactured housing equipment from any particular vendor. The board is also empowered to adopt rules relative to its administration over these subdivisions, subject to the approval of the bureau chief of the consumer protection and antitrust bureau of the department of justice. *See* RSA 205-A:31 (2000).

Matters involving manufactured housing park rules may be brought to the board by petition of a resident or owner of a manufactured housing park, *see* RSA 205-A:27, IV, or by written complaint of the bureau chief of the consumer protection and antitrust bureau, *see* RSA 205-A:30 (2000). Complaints regarding manufactured housing park rules may also be brought in district court by "[a]ny police department or agency, or the consumer protection and antitrust bureau." RSA 205-A:12; *see also* RSA 205-A:12-a. In addition, any violation of RSA 205-A:2 also constitutes an unfair trade practice and "may be enforced as provided in RSA 358-A." RSA 205-A:13-a.

■ Hynes argues that because the board's sole function is to resolve factual disputes, its existence and establishment violates the separation of powers doctrine set forth in Part I, Article 37. He asserts that the board's enabling legislation unlawfully usurps judicial power.

Part I, Article 37 provides:

> In the government of this state, the three essential powers thereof, to wit, the legislative, executive, and judicial, ought to be kept as separate from, and independent of, each other, as the nature of a free government will admit, or as is consistent with that chain of connection that binds the whole fabric of the constitution in one indissoluble bond of union and amity.

The drafters of Part I, Article 37 recognized, however, that the separation of powers doctrine "does not require the erection of impenetrable barriers between the branches of our government." *Petition of Mone*, 143 N.H. 128, 134 (1998) (quotation omitted). The doctrine thus "contemplates some overlapping and duality in the division as a matter of practical and essential expediency." *McKay v. N.H. Compensation Appeals Bd.*, 143 N.H. 722, 726 (1999) (quotation omitted).

In support of his argument, Hynes relies principally upon *Smith Insurance, Inc. v. Grievance Committee*, 120 N.H. 856 (1980). In *Smith Insurance, Inc.*, we addressed "the constitutionality of RSA 402:75 (Supp. 1979), establishing [a] Grievance Committee empowered to review the termination by insurance companies of agency agreements between the companies and their agents." *Id.* at 857. The Grievance Committee was "solely empowered to hold hearings on private disputes between insurance agents and insurance companies relative to the termination of their contracts and to give some equitable relief in the form of an order requiring the insurance company to rescind its termination of the agency contract." *Id.* at 862. Although the Grievance Committee's decisions could be appealed to the superior court, we ruled that the legislation empowering it to hear agency contract disputes violated the separation of powers doctrine. *Id.* We observed that "[i]f . . . the duty of an executive board is primarily to decide questions of legal rights between private parties that are unconnected to any regulatory function . . . such function belongs to the judiciary." *Id.*

Hynes also relies upon *Opinion of the Justices*, 87 N.H. 492 (1935). At issue in *Opinion of the Justices* was proposed legislation that would have created a commission to adjudicate motor vehicle accident disputes. *Id.* at 492-93. We held that the proposed bill was invalid because it authorized an executive agency to adjudicate private litigation unrelated to protection of a public interest. *Id.* at 495-96. We noted that "when an executive board has regulatory functions, it may hear and determine controversies which are

incidental thereto, but if the duty is primarily to decide questions of legal right between private parties, the function belongs to the judiciary." *Id.* at 493.

■ Hynes' reliance upon *Smith Insurance, Inc.* and *Opinion of the Justices* is misplaced. The board, unlike the administrative bodies at issue in *Smith Insurance, Inc.* and *Opinion of the Justices, has* a regulatory function. It regulates manufactured housing park rules and park owner conduct. Its dispute resolution function is inextricably linked to its regulatory function. Resolving disputes is how the board enforces RSA chapter 205-A's requirements regarding manufactured housing park rules.

Moreover, unlike the administrative bodies at issue in *Smith Insurance, Inc.* and *Opinion of the Justices,* the board is empowered only to decide claims arising under statutes governing manufactured housing park rules. *See* RSA 205-A:27. Granting an administrative body authority "to resolve factual disputes underlying a purely statutory right" violates no constitutional command. *See McKay,* 143 N.H. at 727. By contrast, the administrative bodies at issue in *Smith Insurance, Inc.* and *Opinion of the Justices* were authorized to hear *common law* claims. *See Smith Insurance, Inc.,* 120 N.H. at 862 (Grievance Committee heard common law claims related to termination of agency agreements); *Opinion of the Justices,* 87 N.H. 492 (proposed legislation would empower commission to hear motor vehicle common law negligence claims); *see also McKay,* 143 N.H. at 728.

We are not persuaded by Hynes' argument that because Hale signed an agreement to abide by the park's rules, her claim sounds in breach of contract. In her board complaint, Hale did not seek common law redress for breach of contract, but rather the statutory redress afforded by RSA chapter 205-A. *See id.* at 727. She did not seek a determination that Hynes breached her lease, but rather a determination as to the validity of his enforcement of park rule 6(k). Nor did she seek damages for any alleged breach of her lease, but rather a declaration that enforcing park rule 6(k) to require her to replace six-foot fencing with four-foot fencing violated RSA 205-A:2, VIII(d). *See id.*

## II. Board's Jurisdiction

Under RSA 205-A:27, II, the board has no jurisdiction over "any issues relative to rent or rental increases or jurisdiction over evictions." Hynes argues that, pursuant to RSA 205-A:27, II, the

board had no jurisdiction over Hale's complaint because it related to an eviction action. We disagree.

"In matters of statutory interpretation, this court is the final arbiter of the intent of the legislature as expressed in the words of a statute considered as a whole. We look first to the statutory language itself, and where possible, we ascribe the plain and ordinary meanings to words used." *Brewster Academy v. Town of Wolfeboro*, 142 N.H. 382, 383-84 (1997) (quotations and citation omitted). "If the language is plain and unambiguous, we need not look beyond the statute for further indications of legislative intent." *Doggett v. Town of North Hampton*, 138 N.H. 744, 746 (1994) (quotation omitted).

■ The plain language of RSA 205-A:27, II divests the board of jurisdiction over *evictions*, not over board complaints related to evictions. When Hale filed her complaint, there was no pending eviction action. The board thus had jurisdiction over her complaint, even though it related to a potential eviction action.

■ We disagree that the notice to quit converted the parties' dispute over the validity of the requirement that Hale replace six-foot-high fencing with four-foot-high fencing into an "eviction." We need not decide whether the filing of a writ in district court would have divested the board of jurisdiction in order to agree with the superior court that the notice to quit did not do so. Even if we assume that the filing of a writ would have divested the board of jurisdiction, no such writ was filed in this case. Although the notice to quit may be a requisite step in the eviction process, it is not itself an eviction action. *See* RSA 540:2, :13.

*III. Erroneous Factual Finding*

Hynes contends the board erroneously found implied permission to maintain the fence's original height from approval of the purchase and sale agreement listing the fence as "property included" in the purchase price. He argues that this finding is unsupported by the evidence and erroneous as a matter of law. The trial court's ruling, upholding the board's factual finding, is reasonably supported by the evidence and is not legally erroneous. *See Mt. Valley Mall Assocs.*, 144 N.H. at 647.

■ The record shows that Hynes approved Hale's purchase of the manufactured housing unit. As the trial court noted, even if Hynes was unaware of the precise terms of the purchase and sale

agreement, when Hale purchased the unit, Hynes was aware that it was surrounded by a six-foot-high fence. The record does not show that Hynes notified Hale, at the time of purchase, that the fence had to be removed or that if repaired, the replacement sections could be only four feet high. From these facts, the board reasonably could have found that Hale had implied permission to maintain the fence at its original height.

■ Hynes asserts that even if factually correct, the trial court's finding (and derivatively the board's finding) is erroneous as a matter of law. He first argues that RSA 205-A:2, VIII(d), restricting a manufactured housing park owner's ability to require a tenant to remove private property for which the tenant had prior permission, does not apply where the permission is "implicit." To the contrary, RSA 205-A:2, VIII(d) refers only to "prior permission," and does not require that such permission be explicit.

Hynes next argues that any implied grant of permission could not override the express prohibition against fences over four feet in height contained in the park's rules, which were incorporated in Hale's lease. This argument is without merit. Hale did not seek to enforce an implied covenant in her lease. Rather, she sought a declaration that applying the express prohibition against fences over four feet in height violated RSA 205-A:2, VIII(d).

*IV. Scope of Relief*

Hynes argues that the board exceeded its remedial authority by issuing injunctive relief. The board concedes that it has neither statutory nor inherent authority to impose injunctive relief. Nonetheless, it asserts that it may set forth injunctive relief in its orders because they are entered by the superior court as court judgments. Thus, the board argues, while it may not have equitable powers, the superior court "possesses the equitable power necessary to enter judgment that includes injunctive relief and also to then enforce that judgment."

■ While we agree with the board that the superior court has the power to enter equitable relief, we believe it was error for the court to affirm an injunction imposed by the board. When it affirmed the board's order, the court did not exercise its own remedial powers but merely enforced the board's remedy. Therefore, because the board has no authority to issue injunctive relief, it was error for the court to affirm the board's issuance of an injunction. Accordingly, we

reverse that portion of the superior court's order upholding the board's authority to issue injunctive relief.

*Affirmed in part; reversed in part.*

BROCK, C.J., and BRODERICK, NADEAU and DUGGAN, JJ., concurred.