Rockingham
No. 98-401

RONALD MALOOF AND ROBIN MALOOF

v.

ROBERT BONSER, CEDAR WATERS VILLAGE, INC.
AND CEDAR WATERS VILLAGE PARTNERSHIP

December 29, 2000

*J. Christopher McGuirk*, of Newmarket, on the brief and orally, and *Stephen J.C. Woods*, of Exeter, on the brief, for the plaintiffs.

*William A. Dewhurst*, of Nottingham, on the brief and orally, for the defendant Cedar Waters Village Partnership, and Terry L. and Mary L. Bonser, on the brief, *pro se.*

BRODERICK, J. The defendant, Cedar Waters Village Partnership (the partnership), and Terry and Mary Bonser (Bonsers), individual partners of the defendant partnership, appeal a jury verdict awarding the plaintiffs, Ronald and Robin Maloof, $25,000 for damages arising from the purchase of a mobile home. They argue that the Trial Court (*Murphy*, J.) erred in (1) permitting the jury to consider conduct which occurred before the time frame alleged in the writ, (2) instructing the jury that a partnership has a perpetual existence, (3) submitting a verdict form to the jury that incorrectly identified the proper defendants, (4) failing to rule that certain alleged tortious statements were mere opinions, and (5) failing to require the plaintiffs to adequately prove their pecuniary loss. We affirm.

I

The following facts were adduced at trial. In October 1985, the Maloofs visited the Cedar Waters Village mobile home park in Nottingham to inspect a mobile home listed for sale by a resident. They agreed to purchase it for $38,000, and obtained approval from defendant Robert Bonser and his son, Terry Bonser, to keep the home on site in exchange for a lot rental fee. The Maloofs did not know, however, that the lawfulness of the home's location was the subject of ongoing litigation because Robert Bonser refused to comply with Nottingham's zoning ordinance.

The Maloofs sought a $33,000 loan from Indian Head Bank to facilitate their purchase. The bank initially accepted their application but later refused to extend financing once it discovered a "problem" with the park property. The bank never provided specifics to the Maloofs. The Maloofs, in turn, spoke with the seller of the home who advised them of a prior permit problem that had been resolved. They subsequently obtained financing from another bank.

In May 1986, the Maloofs first learned that the park property was involved in litigation. They received a superior court order requiring the removal of numerous homes, including the Maloofs', within seven days due to Robert Bonser's noncompliance with Nottingham's zoning ordinance. The court order was attached to an eviction notice from Robert Bonser informing them that he intended to appeal the court's directive but was required by law to issue the notice. He verbally reassured the Maloofs that he had no intention to evict them. The following week, the Maloofs attended a court hearing without counsel and told the court that they had just learned of the litigation. The court granted them an additional thirty days beyond the removal of the last mobile home to remove their home from the park property. Robert Bonser periodically informed the Maloofs that he was "winning" the ongoing litigation.

In late July 1989, after Robert Bonser exhausted his avenues of appeal, see Town of Nottingham v. Bonser, 131 N.H. 120, 552 A.2d 58 (1988), cert. denied, 490 U.S. 1109 (1989), the superior court issued an order advising that the next scheduled hearing would be for "the determination of an orderly plan to remove the mobile homes in question." In the spring of 1990, because the Maloofs were unable to secure an alternate site for their home, the town removed it from the park and placed it on a storage lot. In the process, the home suffered some structural damage. Because the Maloofs could not afford rent on an apartment and remain current on their mobile home mortgage, they defaulted on their mortgage which had an

outstanding balance of $29,900. To that point, the Maloofs had paid a total of $23,933.18 on the loan, primarily for interest. The home was subsequently sold at auction for $2,500.

By writ dated February 7, 1990, the Maloofs brought suit against the partnership, Cedar Waters Village, Inc. (the corporation), and Robert Bonser seeking money damages. They claimed that "since June of 1986, and until August of 1989" the defendants, as their landlords, misrepresented the status of litigation involving the park property. At trial, the Maloofs presented testimony, without objection, that the tortious conduct occurred in 1985 when Robert Bonser failed to reveal the existence of the litigation at the time they purchased their home and agreed to pay a lot rental agreement. After a two-day trial, the jury returned a verdict for the Maloofs in the amount of $25,000. The defendants moved unsuccessfully for a judgment notwithstanding the verdict and for a new trial. The defendant partnership and the Bonsers appeal.

## II

The appellants first argue that the trial court erred by permitting the jury to consider conduct that occurred in 1985 when, in fact, the writ alleged that the wrongful conduct occurred between June 1986 and August 1989. As a consequence, they contend that the Maloofs' reliance on the 1985 conduct as the sole basis for liability surprised them and effectively, and impermissibly, amended the writ. They also argue that a claim based on the 1985 conduct would be barred by the statute of limitations. Finally, they assert that the trial court should have dismissed the partnership as a defendant because it did not come into existence until 1987, well after the alleged 1985 conduct.

We reject the appellants' arguments premised on surprise and the statute of limitations because they did not object to the admission of the 1985 conduct at trial. In addition, in response to a motion for directed verdict, the Maloofs specifically argued that they relied on Robert Bonser's failure to disclose potential site problems in 1985. Again, the record reveals no exception to such argument. Therefore, it is too late to raise an objection on appeal that was not preserved at trial. Further, we decline to excuse the appellants' obligation to object in a timely fashion because they were "surprised." Indeed, their failure to object belies any such claim. "Preservation requires that [a party] make a *specific* objection to provide the trial court an opportunity to correct any error it may have made, and does not enable counsel to comb the record on a treasure hunt for issues

never properly brought before the trial judge." *State v. Seymour*, 142 N.H. 620, 626, 707 A.2d 130, 134 (1998) (citations, quotation, and brackets omitted).

■ We need not address the appellants' argument that because the 1985 conduct predated the existence of the partnership and its predecessors, the partnership is not liable for that conduct as a matter of law. The appellants raised this issue for the first time before the trial court in a post trial motion to set aside the verdict. They did not, however, bring this issue to the trial court's attention at trial, nor did they ever object to any testimony at trial on the basis that the partnership was not in existence. Further, the appellants point to no evidence in the record addressing, much less establishing, when the partnership was first established.

## III

■ The appellants next argue that the trial court erred in instructing the jury that "[Robert] Bonser, who is now deceased and, who is a partner in this enterprise, made certain misrepresentations . . ." because Robert Bonser was not a partner at the time of trial. Thus, they assert, the instruction erroneously lead the jury to believe that partnerships have a perpetual existence despite the death of an individual partner. No objection was made to the jury instructions at trial, and thus, this issue is waived. *See State v. Allison*, 127 N.H. 829, 830, 508 A.2d 1084, 1089 (1986).

## IV

The appellants also contend that the trial court erred in submitting a verdict form to the jury which identified Terry and Mary Bonser as defendants when the writ named only the partnership, the corporation, and Robert Bonser as defendants. They argue that this error enabled the jury to render a verdict against individuals who "were not party defendants to [the] action, were not represented at trial, were not served notice, [and] were unaware that the trial court considered them to be personally defendants and personally on trial." Therefore, they argue that the verdict is invalid.

The verdict form was captioned "Ronald Maloof, et al v. Terry Bonser, et al." It provided two options for the jury, a "plaintiff's verdict" or a "defendant's verdict." Within the latter section, the form stated: "The Jury finds for the Defendants *Terry and Mary Bonser*, . . . ." The form did not expressly identify the corporation, the partnership, or Robert Bonser as named defendants. Ultimately, the jury completed the "plaintiff's verdict" section by stating: "The

Jury find[s] for the Plaintiffs *Ronald and Robin Maloof* and assesses damages in the sum of: Twenty-five thousand dollars and no cents."

■ The Maloofs concede that the verdict form improperly identified Terry and Mary Bonser as individual parties and thus, any verdict rendered against them as individuals is invalid. With respect to the partnership, however, we conclude that it waived any claim of error to the verdict form because it never objected at trial. Acknowledging its failure to object, it nonetheless contends that it should not be denied appellate review because its counsel was "deferring to the judge," and the plaintiffs' attorneys "had an affirmative *duty* to object to the incorrect verdict form as officers of the court and to protect their clients' ability to collect." The partnership, however, provides no legal authority to support its novel argument, and its challenge to the verdict's validity is deemed waived.

## V

■ The appellants next argue that the trial court erred by failing to rule that Robert Bonser's statements about the status of the park litigation were opinions, not statements of fact, and thus could not serve as the basis of a misrepresentation claim. They argue that, as a matter of law, the plaintiffs could not have reasonably relied on a lay person's assessment of the progress of litigation, and that court proceedings are a matter of public record such that a litigant does not have knowledge superior to the general public. This argument is based on the erroneous assumption that Robert Bonser's statements to the Maloofs on the status of the then-pending litigation served as the basis of liability. These statements, in fact, occurred after the Maloofs received the court order and eviction notice in May 1986. The sole basis for liability in this case was Bonser's silence in 1985 when they purchased the mobile home and entered into a lot rental agreement. Therefore, we reject this argument.

## VI

The appellants contend that the trial court erred in failing to reduce the damages award because it was not supported by the evidence. We find no error.

■ "New Hampshire does not require that damages be calculated with mathematical certainty, and the method used to compute damages need not be more than an approximation." *Phillips v.*

*Verax Corp.*, 138 N.H. 240, 247, 637 A.2d 906, 911 (1994). At trial, the Maloofs testified that they purchased the mobile home for $38,000. They provided approximately $5,000 as a down payment and financed the remainder. Before defaulting on the mortgage with a remaining balance of $29,900, the Maloofs had paid $23,933.18 primarily in interest. Therefore, we conclude that the $25,000 verdict, although not precise, was amply supported by evidence.

█ The appellants also attack the damage award by asserting that they failed to submit certain evidence challenging the claimed damages because their counsel misinterpreted an admonishment by the judge during his cross-examination to mean that he was precluded from pursuing the issue of damages for the balance of the trial. We need not address this argument because the appellants fail to identify any evidence they would have offered. *Cf. State v. Hoag*, 145 N.H. 47, 52, 749 A.2d 331, 333 (2000) (new trial not warranted unless error of precluding evidence was prejudicial to case).

██ We decline to address the appellants' cursory argument that: "The jury was mislead or biased, in that it failed to consider the duty of the plaintiffs to mitigate their own damages." *See McKay v. N.H. Compensation Appeals Bd.*, 143 N.H. 722, 730, 732 A.2d 1025, 1032 (1999) (court need not address cursory argument). Also, issues raised in the notice of appeal but not briefed are waived. *State v. Dorval*, 144 N.H. 455, 458, 743 A.2d 836, 839 (1999).

*Affirmed.*

THAYER, J., sat for oral argument but resigned prior to the final vote; BROCK, C.J., concurred; HORTON, J., retired, specially assigned under RSA 490:3, concurred.