[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] DECISION
Several motions are present before this Court. Defendants have (1) objected to entry of final judgment pursuant to Rule 54(b) of the Superior Court Rules of Civil Procedure; (2) moved for judgment as a matter of law pursuant to Rule 50 of the Superior Court Rules of Civil Procedure; and (3) moved for a new trial pursuant to Rule 59 of the Superior Court Rules of Civil Procedure. Plaintiffs have filed timely objections to each of the above-mentioned motions.
 Facts and Travel
This action arises from the purchase of real property, including a building, which houses a general store and two apartments, in Spofford, New Hampshire (the "Property") by Steven Foote, Dana Foote, Tamara Foote, and March Hill Corporation ("Plaintiffs"). Fleet Financial Group subsidiary ("Defendants") conducted a foreclosure sale of the Property on October 11, 1995. At that sale, Plaintiffs successfully bid $45,000 and purchased the Property. Plaintiffs claim that at the time of the auction, Defendants were aware of environmental reports indicating groundwater contamination emanating from a former industrial site in the vicinity of the Property. Defendants, despite this knowledge, failed to provide the auction bidders with this information. Plaintiffs claim they learned of the existence of the report and the groundwater contamination more than three years after they purchased the Property.
Plaintiffs filed the instant lawsuit asserting the following claims: consumer protection violations, breach of contract, fraud, intentional infliction of emotional distress, battery, and personal injury. This Court ordered that the case be bifurcated. The first three claims — consumer protection violations,[1]
breach of contract, and fraud — were to be tried in the first proceeding. The remainder would be tried thereafter.
Various experts testified at trial as to the water contamination and its effect. Additionally, Plaintiffs testified as to how their lives were impacted as a result of the contamination — namely, Plaintiffs were forced to shower elsewhere; Plaintiffs boiled or purchased water; Plaintiffs suffered financial detriment as the Property's value had diminished; Plaintiffs refused to make home improvements, recognizing the impossibility of recouping the cost through resale; etc. This Court applied New Hampshire law to the claims asserted, charging the jury as to enhanced damages, a damage award unique to that state.
Following a 2½ week trial, the jury returned a verdict in favor of Plaintiffs, awarding Plaintiffs $5,140,000. Defendants object to the entry of final judgment. In addition, Defendants moved for judgment as a matter of law or in the alternative a new trial. Plaintiffs timely objected to each of Defendants' motions.
 Entry of Judgment
Defendants object to Plaintiffs' request for entry of judgment. In support of this position, Defendants assert that this case is not ripe for entry of judgment because the bifurcation order resulted in two separate trials which, although involving distinct legal theories, are based on the same fundamental set of facts. Plaintiffs, however, argue that judgment should enter as the parties have presented all of the evidence concerning liability and damages with respect to the claims of fraud, breach of contract, and consumer protection. Therefore, Plaintiffs contend no just reason for delay is present, and judgment must enter.
Rule 54 of the Rhode Island Superior Court Rules of Civil Procedure governs whether judgment shall enter. Rule 54 states in pertinent part:
 "(a) Definition; Form. `Judgment' as used in these rules includes a decree and any order from which an appeal lies. A judgment shall not contain a recital of pleadings, the report of a master, or the record of prior proceedings.
 (b) Judgment Upon Multiple Claims or Involving Multiple Parties. When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties."
In Curtiss-Wright Corp. v. General Electric Co., 446 U.S. 1
(1980), the Supreme Court determined that the entry of judgment pursuant to Rule 54(b) of the Federal Rules of Civil Procedure[2] was not in error, where a single count of a multi-count complaint was disposed of through summary judgment.Id. at 13. In that case, the claims asserted included: fraud, misrepresentation, and breach of contract. Id. at 3-4. The defendant counterclaimed, alleging unjust enrichment and seeking reimbursement of expenditures which enabled the plaintiff to fulfill its contractual obligations. Id. at 4. Summary judgment entered on the breach of contract claim, and the trial court entered judgment in the amount of 19 million dollars on that count. Id. at 4-5. The Supreme Court found that the trial court did not abuse its discretion in entering final judgment. Id. at 13.
The Curtiss Court, in affirming the trial court, reasoned that the trial judge is extended great deference in determining whether final judgment shall enter because the trial judge is better equipped "to explore all the facets of a case . . . [as] assessment of the equities between parties [is] based on an intimate knowledge of the case." Id. at 12. The trial justice should "take into account judicial administrative interests as well as the equities involved." Id. at 8. Furthermore, it is appropriate "to consider such factors as whether the claims under review were separable from the others remaining to be adjudicated and whether the nature of the claims already determined was such that no appellate court would have to decide the same issues more than once even if there were subsequent appeals." Id. at 9. Under Rule 54(b), whether final judgment should enter depends on "the interrelationship of the claims so as to prevent piecemeal appeals in cases which should be reviewed only as single units."Id.
Again, our Supreme Court reviewed a trial court's decision to enter final judgment whereby only the counterclaims asserted by the defendant were disposed of on summary judgment. Astro-Med,Inc. v. R. Moroz, Ltd., 811 A.2d 1154, 1155 (R.I. 2002). To begin its analysis, the Court looked to the purpose of Rule 54(b), namely that Rule 54(b) was intended to "avoid piecemeal appeals." Id. Specifically, the Court recited the language of a Rhode Island Civil Practice treatise, which stated:
 "[t]he policy against piecemeal appellate review militates in favor of delaying judgment until all claims involving all parties are ripe for disposition and entering judgment as to all only when that time arrives. However, some claims may involve sufficiently distinct matters so that withholding judgment will serve no useful purpose and may countenance delay which is productive of hardship and even denial of justice." Id. (citing, 1 Kent, R.I. Civ. Prac. 396, 400 § 54.3 (1969)).
This policy is to ensure that appellate courts are not required to continuously "relearn the facts of a case on successive appeals." Id. Therefore,
 "[w]hen considering judicial administrative interests, a hearing justice should take into account the existence of a transactional relationship between a remaining unadjudicated claim and a claim that has been disposed of; for entry of final judgment on fewer than all of the claims `raises the spectre of overlapping appeals and the attendant possibility of an uneconomical use of judicial resources.'" Id. at 1156-1157 (citing, Westinghouse Broadcasting Co. v. Dial Media, Inc., 122 R.I. 571, 578, 410 A.2d 986, 990 (R.I. 1980)).
The Court, applying the above-mentioned principals, found that "judicial waste" would not result from the entry of final judgment as the undecided claims were "factually and legally distinct" from those claims already decided. Id. at 1157.
In the instant case, the issues to be decided in each segment of the bifurcated trial are not "factually distinct," although they may be legally distinct. The factual underpinnings of each claim — whether they sound in fraud, breach of contract, consumer protection, personal injury, battery, or intentional infliction of emotional distress — centers around the sale of contaminated Property by Defendants to Plaintiffs. In each trial, this transaction, Defendants' knowledge, and Plaintiffs' reaction must be analyzed. Therefore, an appeal from each trial would necessitate the relearning of the same factual allegations, making final judgment inappropriate for this first trial.
Furthermore, equity would not affect this decision. This case is unlike Curtiss, wherein the Court found that equity would favor the entry of final judgment because the prevailing party could utilize his damage award in the market at a greater rate of return than that provided under prejudgment interest. In this instance, prejudgment interest is 10% under New Hampshire law or 12% under Rhode Island law. The market, on the other hand, has been notoriously low. As no specific issue regarding equity has been raised, and this Court finds none, the equities are deemed equally balanced among the parties. For the foregoing reasons, final judgment will not enter in this first portion of the case.
Despite this Court's denial of entry of final judgment, this Court will nevertheless consider and determine the remaining motions. See C.A. Wright, A. Miller M. K. Kane, FederalPractice and Procedure, § 2812, at 135; see also DeLong v.International Union, 850 F. Supp. 614, 618, 1993 U.S. Dist. LEXIS 20133 (S.D.Oh. 1993) (stating "[a] motion for new trial may be filed even though a court has not entered final judgment);see also Boehringer Ingelheim Vetmedica, Inc. v.Schering-Plough Corp., 106 F. Supp.2d 696, 699, 2000 U.S. Dist. LEXIS 11033 (D.N.J. 2000) (stating "the Rules do not require a party to wait to file a Rule 50 or Rule 59 until after the entry of such a `judgment'"); see also Jurgens v. McKasy,905 F.2d 382, 385, 1990 U.S. App. LEXIS 8255 (Fed. Cir. 1990) (stating "[t]he language of Rule 59(e), however, does not expressly require that there be a pre-existing judgment"); seealso Partridge v. Presley, 189 F.2d 645, 646, 88 U.S.App.D.C. 298 (D.C. Cir. 1951) (stating "[i]t is perhaps somewhat unusual practice to move for a new trial before the actual entry of a judgment, but to do so is not forbidden by Rule 59(b)"); butsee Hiebert Contracting Co. v. Trager, 274 F. Supp. 801 (D. Mass. 1967) (dismissing without prejudice a Rule 59 motion filed before judgment was entered or any findings on the issue of damages were filed).[3]
 Judgment as a Matter of Law
Rule 50 of the Rhode Island Rules of Civil Procedure provides in pertinent part:
 "Whenever a motion for a judgment as a matter of law made at the close of all the evidence is denied or for any reason is not granted, the court is deemed to have submitted the action to the jury subject to a later determination of the legal questions raised by the motion. Such a motion may be renewed by service and filing not later than 10 days after entry of judgment. . . . If a verdict was returned, the court may, in disposing of the renewed motion, allow the judgment to stand or may reopen the judgment and either order a new trial or direct the entry of judgment as a matter of law. . . ."
Under Rule 50(b), a party may renew a motion for judgment as a matter of law which was denied or not granted at the close of the evidence within 10 days after entry of judgment. To determine a motion for judgment as a matter of law, the trial justice is required to "consider the evidence in the light most favorable to the nonmoving party, without weighing the evidence or evaluating the credibility of the witnesses, and draw from the record all reasonable inferences that support the position of the nonmoving party." Skaling v. Aetna Ins. Co., 742 A.2d 282, 287 (R.I. 1999). Additionally, "if, after such a review, there remain factual issues upon which reasonable persons might draw different conclusions, the motion for judgment as a matter of law must be denied." Id. However, where the evidence supports only one conclusion, namely that the Plaintiffs may not prevail, judgment as a matter of law must be granted. Id. at 252 (citing, KenneyManufacturing Co. v. Starkweather Shepley, 643 A.2d 203, 206 (R.I. 1994)).
 Defendants' Arguments
Defendants argue three points in asserting their motion for judgment as a matter of law. Defendants argue (1) charging the jury on enhanced damages under New Hampshire law violated Rhode Island public policy; (2) Plaintiffs did not establish their right to bring their action; and (3) the evidence does not support the elements of intent to deceive or malice.
 Enhanced Damages
Defendants assert that public policy of the State of Rhode Island and simplification of the judicial task all weighed in favor of applying Rhode Island law to the instant case. Accordingly, Defendants contend that the instruction as to enhanced damages, a damage award unique to New Hampshire, was erroneous. Additionally, Defendants assert that the instruction of enhanced damages was contrary to the bifurcation order, and enhanced damages are essentially punitive damages which are strictly limited in Rhode Island
This Court, having previously engaged in an extensive conflict of laws analysis pre-trial, finds the jury instruction as to enhanced compensatory damages was proper. Not only did the Court find no real conflict of laws existed between the application of Rhode Island and New Hampshire laws, but also, this Court found that the application of New Hampshire law is appropriate, as all of the acts relating to the present suit occurred in New Hampshire. Furthermore, this Court specifically found that the public policy of Rhode Island would not be violated by the application of enhanced compensatory damages to Plaintiffs' claims. Accordingly, this Court refers to and relies on its pre-trial decision as to this issue.
 Plaintiffs' Right to Bring the Action
Defendants contend that Plaintiffs — without proof of their right to pursue a cause of action on behalf of the corporate entity, to which Stephen Foote assigned his interest in the Property — have failed to establish an essential element of their case. Defendants argue that both the breach of contract claim and the fraud claim belong to the contracting party, Old Spofford General Store, Inc., which has not been named as a party in the instant case. Defendants also contend that this is not an issue of standing, already determined, but rather Plaintiffs' failure to establish an element of their prima facie case, namely the right to sue.
However, Plaintiffs argue that their individual right to bring their claims was admitted in pleadings, which is binding on the parties without evidence. Furthermore, Plaintiffs contend that Defendants failed to raise, and thus waived, this affirmative defense.
Standing is a matter of determining "whether the person whose standing is challenged has alleged an injury in fact resulting from the challenged [act]. If he [or she] has, he [or she] satisfies the requirement of standing." Pontbriand v. Sundlun,699 A.2d 856, 862 (R.I. 1997) (quoting Rhode IslandOpthamological Society v. Cannon, 113 R.I. 16, 26, 317 A.2d 124, 129 (1974)). The "injury in fact" requirement "has been described by Justice Scalia in an oft-quoted passage as `an invasion of a legally protected interest which is (a) concrete and particularized . . . and (b) actual or imminent, not `conjectural' or `hypothetical.'" Pontbriand v. Sundlun,699 A.2d 856, 862 R.I. (1997) (quoting Lujan v. Defenders ofWildlife, 504 U.S. 555, 560, 122 S.Ct. 2130, 2136,119 L.Ed.2d 351, 364 (1992)). "In deciding whether a particular plaintiff possesses the requisite standing, a court should draw the line not between whether the plaintiff has suffered a substantial injury or an insubstantial injury, but between injury and no injury." Ahlburn v. Clark, 728 A.2d 449, 451 (R.I. 1999). SeePontbriand v. Sundlun, 699 A.2d 856, 862 (R.I. 1997).
Our Supreme Court has found that standing is an issue separate and apart from subject matter jurisdiction and may, therefore, be waived. Direct Action for Rights Equality v. Gannon,713 A.2d 218, 222 (R.I. 1998).[4] In Gannon, the Court with regard to standing stated:
 "[o]ur examination of the record, however, reveals that this issue was never raised before the trial justice and, therefore, is also waived. See Montecalvo, 682 A.2d at 926. Nevertheless, during oral argument the city posited that this is an issue involving subject-matter jurisdiction and as a result can be raised at any time. Even though this statement is generally correct, standing is a separate and distinct legal concept from subject-matter jurisdiction. Compare Mark Realty Inc. v. City of Pawtucket, 658 A.2d 912, 912 (R.I. 1995) (standing requires that a party prove injury in fact) with Rock Ridge Limited v. Assesor of Taxes, 667 A.2d 778, 780 (R.I. 1995) (subject-matter jurisdiction is invested by law in the Court). Therefore, in this case there is no question that the Superior Court had proper subject-matter jurisdiction over this case and that the city waived its objection to standing." Id.
In the instant case, Plaintiffs have clearly shown they have suffered injury in fact. The building in which they reside — and which they own, albeit through a corporate vehicle — is serviced with contaminated water. Defendants knew of the contamination, and were obligated to disclose this information, yet never revealed this to Plaintiffs before the sale. As a result of this contamination, Plaintiffs suffered actual damages stemming from the devaluation of the property and intangible damages stemming from the aggravation of having to cope with the contamination. Clearly, Plaintiffs have suffered injury in fact.
Furthermore, following the decision of our Supreme Court, Defendants were obligated to raise this defense in a timely fashion, which Defendants failed to do. Accordingly, the longstanding rule of raise-or-waive shall be applied to the instant case. Therefore, judgment as a matter of law is denied on these grounds.
 Evidence of Intent or Malice
Finally, Defendants contend that Plaintiffs failed to establish intent to deceive or malice, an element necessary to award enhanced damages. Defendants assert that a post-it note attached to the environmental report, on which the name of Plaintiffs' attorney and his telephone number were written, rebuts any evidence of intent or malice. Plaintiffs, however, rely on the following evidence: Defendants dropped the price of the Property after discovering the contamination; Defendants did not disclose the contamination at the auction; Michael C. Demers said at the sale that the Property was clean; and other evidence, which Plaintiffs contend indicate, at the minimum, conscious indifference. Therefore, Plaintiffs assert that sufficient evidence of intent was presented to sustain a verdict in favor of Plaintiffs as to enhanced damages.
New Hampshire permits the application of "liberal compensatory damages" or "enhanced compensatory damages" in very limited circumstances. Specifically, New Hampshire courts require that these damages be applied only "`where the acts complained of were wanton, malicious, or oppressive, [and] the compensatory damages for the resulting actual material loss can be increased to compensate for the vexation and distress caused the plaintiff by the character of defendant's conduct.'" Crowley v. GlobalRealty, 124 N.H. 814, 819 (N.H. 1984) (citing Vratsenes v. N.H.Auto, Inc., 112 N.H. 71, 72, 289 A.2d 66, 67 (N.H. 1972)).
In Aubert v. Aubert, 129 N.H. 422, 431, 529 A.2d 909, 915 (N.H. 1987), the New Hampshire Supreme Court refined this definition by stating: "the mere fact that an intentional tort is involved is not sufficient; there must be `ill will, hatred, hostility, or evil motive on the part of the defendant.'" Id.
(citing Munson v. Raudonis, 118 N.H. 474, 479, 387 A.2d 1174, 1177 (1978)). In that case, the defendant shot her husband in the face at close range. The evidence presented in Aubert clearly substantiated a finding of ill-will because her mens rea was established in the criminal proceeding. Id. at 431,529 A.2d 915. (finding "the defendant deliberately and with premeditation fired a .38 caliber hollow point bullet into the plaintiff's face"). However, deliberation and premeditation are not necessary elements. Again, Plaintiffs need only establish that Defendants acted wantonly, maliciously, or oppressively.
Again, Plaintiffs presented evidence that the Bank knew of the contamination and the type and location of the water supply. Plaintiffs also submitted memoranda which Defendants possessed and which questioned the potability and safety of the water. Nevertheless, Defendants failed to disclose this information. Thereafter, Defendants received an environmental report outlining the damage to the Property and still did not disclose. At auction, Defendants dropped the price $77,000 after learning of the contamination. Nevertheless, Defendants described the Property as clean and did not disclose the contamination to the prospective purchasers. Without considering the credibility of witnesses or weighing the evidence, a reasonable person could infer that the Defendants wanted to rid themselves of the problems associated with the Property and did not disclose the contamination to easily effectuate that goal.
Defendants, however, presented evidence that a post-it note was placed on the environmental report which contained the number of Plaintiffs' attorney. Based on the note, two plausible explanations for the failure to disclose may be articulated: (1) the note was inadvertently overlooked or (2) the note was consciously disregarded after further consideration of the matter. Therefore, reasonable persons could reach different conclusions as to whether Defendants' failure to disclose was willful, wanton, or oppressive.
Accordingly, viewing the evidence in the light most favorable to the nonmoving party, this Court cannot declare as a matter of law that the evidence leads to only one conclusion. Given reasonable persons could reach different conclusions based on the evidence presented by both parties, judgment as a matter of law must be denied.
 Motion for a New Trial
Rule 59 provides in pertinent part:
 "A new trial may be granted to all or any of the parties and on all or part of the issues, in an action in which there has been a trial by jury for error of law occurring at the trial or for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of this state."
When ruling on a motion for a new trial, the trial justice sits as a "super juror" by independently evaluating all of the material evidence and assessing the credibility of witnesses.Rezendes v. Beaudette, 797 A.2d 474, 477 (R.I. 2002). After reviewing and evaluating the evidence, the trial justice should deny the motion for a new trial if the evidence indicates that reasonable minds might reach different conclusions. Perkins v.City of Providence, 782 A.2d 655, 656 (R.I. 2001) (citingKurczy v. St. Joseph Veterans Association, Inc., 713 A.2d 766, 770 (R.I. 1998)). Furthermore, "the jury's verdict will remain unchanged if the reviewing court, upon looking at the record in the light most favorable to the prevailing party, finds any competent evidence which sustains the jury's verdict." Fox v.Allstate Ins. Co., 425 A.2d 903, 907 (R.I. 1981) (quotingPowers v. Carvalho, 117 R.I. 519, 525, 368 A.2d 1242, 1246 (1977)). Only where the verdict "fails to respond truly to the merits of the controversy and to administer substantial justice and is against the preponderance of the evidence," should the court set aside the jury's verdict and order a new trial.Galusha v. Carlson, 120 R.I. 204, 206-206, 386 A.2d 634, 635 (R.I. 1978).
 Propriety of Jury Instruction on Enhanced Damages
Defendants argue that the instruction on enhanced compensatory damages was improper and constituted an error warranting a new trial. As this claim does not require this Court to make credibility determinations or weigh the evidence, this Court refers to and relies on its analysis of the jury instruction claim previously discussed with reference to judgment as a matter of law.
 Compensatory Damages
Defendants argue that actual damages range from $45,000 (the purchase price of the Property) to $120,000 (the bank's appraisal of the Property). In response to this argument, Plaintiffs contend that the award of compensatory damages ($140,000) was supported by the evidence. Plaintiffs assert that the award of compensatory damages needs only be an approximation. Due to the incidental costs suffered by Plaintiffs, namely, the cost of bottled water, the cost of improvements to the Property, etc., the additional $20,000 award, in excess of the appraisal of the Property by the bank, is supported by the evidence.
In the instant case, this Court, having reviewed and weighed the evidence, considered the credibility of the witnesses, finds that the evidence supports Plaintiffs claims of breach of contract and fraud. Furthermore, the evidence presented supports the award of compensatory damages, as this award does not shock the conscience of this Court. See English v. Green,787 A.2d 1146, 1150 (R.I. 2001) (stating "a damage award may be disregarded by the trial justice and a new trial granted only if the award shocks the conscience or indicates that the jury was influenced by passion or prejudice or if the award demonstrates that the jury proceeded from a clearly erroneous basis in assessing the fair amount of compensation to which a party is entitled"); see also Butera v. Boucher, 798 A.2d 340, 350 (R.I. 2002) (same). A damage award need only be an approximation and does not require mathematical certainty. See Maloof v.Bonser, 769 A.2d 339, 343, 145 N.H. 650, 655 (N.H. 2000) (stating "New Hampshire does not require that damages be calculated with mathematical certainty, and the method used to compute damages need not be more than an approximation); seealso Butera, 798 A.2d at 350 (stating "[d]amages do not have to be calculated with mathematical exactitude; all that is required is that they are based on reasonable and probable estimates").
Accordingly, this Court finds that the compensatory damage award, in light of the evidence presented at trial, does not shock the conscience of this Court. For the foregoing reasons, the compensatory damage award is affirmed.
 Enhanced Compensatory Damages
Defendants further assert that because enhanced compensatory damages are compensatory in nature, an award of such damages must rely on actual damages suffered by the injured party. Therefore, Defendants argue, the lack of evidence establishing greater actual injury, i.e. the cost incurred by Defendants of coping with the contamination of the property, precludes the award of enhanced damages, or in the alternative, precludes the exorbitant amount of enhanced damages awarded by the jury. Plaintiffs, however, do not address the relationship between actual damages and the award of enhanced compensatory damages, stating only that in light of the case law, the award does not shock the conscience.
Defendants cite Estate of Younge v. Huysmans, 127 N.H. 461,506 A.2d 282 (N.H. 1985) for the proposition that:
 "`recovery of damages for mental suffering and emotional distress is not generally permitted in actions arising out of breach of contract. . . .' Liberal compensatory damages, which include damages for mental suffering, will be awarded in tort actions, however, when the acts complained of were wanton, malicious, or oppressive." Id. at 467, 506 A.2d 287 (citations omitted).
However, Estate of Younge was a pure breach of contract case, in which neither party alleged tortious conduct. Id. In the instant case, Plaintiffs alleged the tort of fraud. Furthermore, the court in Estate of Younge further stated:
 "[i]n Crowley, this court held that damages for family distress are permissible in a claim of intentional misrepresentation of fact in connection with the sale of a family home. The Huysmanses, however, did not bring an action in tort or allege and prove any wanton or malicious conduct in the Bank's breach of the contract, and are not entitled to damages for emotional distress." Id.
Clearly, the Estate of Younge Court recognized the viability of enhanced compensatory damages, but precluded an award for emotional distress damages in that case, as the claims sounded purely in contract.
The evidence upon which Plaintiffs rely, namely the aggravation and frustration of living in a house they hated and the aggravation of having to boil water and shower elsewhere, are exactly those damages for which enhanced compensatory damages were intended to compensate. Specifically, "[e]nhanced compensatory damages may be properly applied in tort cases `when the act complained of has been accompanied by aggravation, insult, oppression, or malice.'" Nollet v. Palmer, 2002 D.N.H. 136, 2002 U.S. Dist. LEXIS 13564 (D.N.H. 2002) (citingVratsenes, 112 N.H. at 73, 289 A.2d at 68). Furthermore, enhanced compensatory damages are awarded when "the compensatory damages for the resulting actual material loss can be increased to compensate for the vexation and distress caused the plaintiff by the character of defendant's conduct." Crowley, 124 N.H. at 819 (citing Vratsenes, 112 N.H. at 72, 289 A.2d at 67). Accordingly, this Court, after independently weighing the evidence, finds that a reasonable jury could find willful, wanton, or malicious conduct, supporting an award of enhanced compensatory damages.
The Nollet Court, however, clearly distinguished between enhanced compensatory damages and punitive damages. Specifically, the Court stated:
 "[e]nhanced damages are not punitive, and they are not awarded in addition to or separate from actual damages. Enhanced compensatory damages are simply the actual damages incurred, `estimated by the more liberal rule that prevails in the case of malicious wrongs.' To justify enhanced damages, a plaintiff must show actual malice. `There must be ill will, hatred, hostility, or evil motive on the part of the defendant.'" Nollet, 2002 D.N.H. 136, 2002 U.S. Dist. LEXIS 13564 (D.N.H. 2002).
Describing the method of calculating enhanced compensatory damages, the Supreme Court of New Hampshire stated: "[i]n fixing the amount of damages consideration is to be given to the result of the act itself, and the circumstances surrounding it, among which motive and the presence or absence of provocation."Vratsenes, 112 N.H. at 73, 289 A.2d at 68. (citing Kimball v.Holmes, 60 N.H. 163, 1880 N.H. LEXIS 106 (N.H. 1980)). In the instant case, Plaintiffs certainly suffered aggravation and discomfort as a result of Defendants' willful failure to disclose. However, in light of the tremendous disparity between the enhanced compensatory damage award ($5,000,000) and the compensatory damage award ($140,000), this Courts finds it necessary to compare those circumstances, upon which the New Hampshire Supreme Court relied to justify enhanced damages significantly in excess of their compensatory damage counterpart, with the circumstances giving rise to an enhanced compensatory damage award in the instant case.
In Aubert, the New Hampshire Supreme Court affirmed an award of $343,000 in liberal compensatory damages, in a case wherein a husband sued his wife for personal injuries after the wife had shot him in the face at close range. Aubert, 129 N.H. at 431, 529 A.2d at 915. The damage suffered by the plaintiff in Aubert
was sufficiently severe to justify the amount of the award. Id.
The Court stated:
 "Armand Aubert's injuries were severe and traumatic. From a distance of less than two feet, the defendant deliberately and with premeditation fired a .38 caliber hollow point bullet into the plaintiff's face. The left side of the plaintiff's cheek, lip and nose area was blown out. Teeth and bone were shattered. Despite extensive reconstructive surgery, some of the damage remains permanent. Under these circumstances, we cannot say that the jury award of damages was excessive as a matter of law." Id.
Also in Daigle v. City of Portsmouth; Daigle v. Pace,129 N.H. 561, 534 A.2d 689 (N.H. 1987), the New Hampshire Supreme Court affirmed damages where the plaintiff was assaulted by several police officers. Although the plaintiff sustained extensive injuries as a result of the assault, his actual medical expenses were relatively low, under $13,000. Id. at 588, 534 A.2d 704. The jury awarded the plaintiff $500,000. Id. at 559, 534 A.2d 692. The Court affirmed this award. Id. at 589, 534 A.2d 705. Affirmation of the award was supported by the severity of the injury, the aggravating circumstances, and the continuing affects of the assault. Id. In that case, the police were pursuing the plaintiff, who was suspected of a crime. Id. at 567, 534 A.2d 691. After capturing the plaintiff, the facts are as follows:
 "[the plaintiff] came upon a Portsmouth officer, who struck him with a night stick. The officer continued to beat Daigle, causing fractures of the skull, black eyes, injuries to the face, neck and right leg, other bruises and contusions, and finally rendering Daigle unconscious. Daigle testified that when he came to, he heard someone say, `He is hurt, hurt pretty bad, you better call an ambulance,' to which someone else replied, `F____ him, leave him there, that will teach him a lesson.'" Id.
In addition to the initial injuries, "the plaintiff continued to suffer migraine headaches, dizziness, positional vertigo and seizures, and had undergone both physical and personality changes attributable to the injuries he received. . . ." Id. at 589, 534 A.2d 705. "Since he was a young man at the time of the injury, Daigle could anticipate a long lifetime to endure the damaging effects. . . ." Id. For all of these reasons, the Court affirmed the jury award. Id.
Conversely, in Nollet, the United States District Court found that diversity jurisdiction could not be sustained as the expected verdict could not reasonably exceed $75,000. Nollet v.Palmer, 2002 D.N.H. 136, 2002 U.S. Dist. LEXIS 13564 (D.N.H. 2002). In that case, the plaintiff alleged intentional trespass, in which actual damages were $7,220, the cost of several trees felled during the trespass. Id. Therefore, in order to meet the $75,000 amount in controversy requirement, the plaintiff would need to recover ten times that amount in enhanced punitive damages. Id. This, according to the Court, "would appear impermissibly punitive," even if malice could be established.Id.
In the instant case, the jury awarded enhanced damages which were 37 times that awarded in compensatory damages. This Court, having independently weighed the evidence, finds a reasonable jury could not have reasonably awarded $5,000,000 in the instant case, as it is clearly excessive in light of the harm and accompanying aggravation suffered by Plaintiffs. Certainly, Plaintiffs suffered aggravation and certain financial difficulties. Nevertheless, the award in question cannot be sustained. Comparing the above-mentioned cases to the instant case, the intangible damages sustained by Plaintiffs are insufficient to justify the jury award.
Again, the plaintiffs in Aubert and Diagle suffered severe physical injuries causing each enormous physical pain well into the future. Furthermore, the plaintiffs in those cases, would, without doubt, continue to experience mental suffering as a result. However, Plaintiffs in the instant case suffered anguish and aggravation, which although exasperating, is in not comparable to the type of intangible damages suffered by the plaintiffs in Diagle or Aubert. Even in the aggregate, these inconveniences — including boiling water, hating the house in which they lived, showering at friends' homes, having their dreams of owning a home become a nightmare — do not rise to the acute level of damages in the two cases mentioned previously.
Prior to deliberations, the jury was advised of the distinction between enhanced compensatory damages and punitive damages, the former a tool for compensation, the later a tool for punishment. This Court finds the jury failed to abide by the Court's instructions with respect to enhanced compensatory damages, and was influenced by passion and prejudice in returning a clearly punitive damage award. Therefore, this Court finds no reasonable jury could award enhanced damages in the amount of $5,000,000 in the instant case.
In addition, this Court is mindful of recent United States Supreme Court decisions in which courts were admonished of the constitutional constraints imposed on punitive sanctions. SeeState Farm Mut. Auto. Ins. Co. v. Campbell, 538 U.S. 408, 416 (2003); see also BMW of N. Am. v. Gore, 517 U.S. 559, 576 (1996). The underlying rationale for imposing such restrictions also may be applied to enhanced compensatory damages, although these damages have been distinguished from punitive damages. InCampbell, the Supreme Court instructed:
 "[w]hile States possess discretion over the imposition of punitive damages, it is well established that there are procedural and substantive constitutional limitations on these awards. The Due Process Clause of the Fourteenth Amendment prohibits the imposition of grossly excessive or arbitrary punishments on a tortfeasor. The reason is that `elementary notions of fairness enshrined in our constitutional jurisprudence dictate that a person receive fair notice not only of the conduct that will subject him to punishment, but also of the severity of the penalty that a State may impose.' To the extent an award is grossly excessive, it furthers no legitimate purpose and constitutes an arbitrary deprivation of property." Campbell, 538 U.S. at 416-417 (Citations omitted).
Of further concern to the Court was the fact that:
 "[j]ury instructions typically leave the jury with wide discretion in choosing amounts, and the presentation of evidence of a defendant's net worth creates the potential that juries will use their verdicts to express biases against big businesses, particularly those without strong local presences. . . . Our concerns are heightened when the decisionmaker is presented . . . with evidence that has little bearing as to the amount of punitive damages that should be awarded. Vague instructions, or those that merely inform the jury to avoid `passion or prejudice' . . . do little to aid the decisionmaker in its task of assigning appropriate weight to evidence that is relevant and evidence that is tangential or only inflammatory." Id. at 417-418.
Again although, the $5,000,000 award in the instant case was in the form of enhanced compensatory damages, and not punitive damages, the reasoning of these Supreme Court cases is applicable. Clearly, the jury in the instant case, having wide discretion in determining the amount of the award, failed to evaluate and assign the appropriate weight to the relevant evidence, and clearly, the jury was influenced by passion and prejudice. Accordingly, the jury's failure to heed this Court's instructions mandates consideration of a new trial.
This Court, having independently evaluated all of the evidence presented, finds that no reasonable jury could award enhanced damages in the amount of $5,000,000, an amount which shocks the conscience of this Court. For all of the foregoing reasons, and in light of the evidence presented as to Plaintiffs' damages, a new trial limited to the issue of enhanced compensatory damages is granted, unless pursuant to Rhode Island law, Plaintiffs file a remittitur within ten days from the issuance of this decision.See Kelaghan v. Roberts, 433 A.2d 226, 229 (R.I. 1981) (stating "[i]f the trial justice finds that a new trial is warranted on the question of damages, it is his duty, before ordering a new trial thereon, to give the plaintiff and opportunity to file a remittitur or the defendant an additur").[5] Counsel shall submit the appropriate judgment for entry.
[1] At the close of the evidence, this Court granted judgment as a matter of law as to claims relying on the New Hampshire Consumer Protection Act based on the statute of limitations.
[2] In Curtiss, the Supreme Court considered Rule 54(b) of the Federal Rules of Civil Procedure. As our Civil Rules of Procedure are modeled after the federal rules, we may look to federal decisions on this issue for guidance thereon. SeeBragg v. Warwick Shoppers World, Inc., 102 R.I. 8,227 A.2d 582, 584 (1967); see also Kelly v. C.H. Sprague Sons Co.,455 A.2d 1302, 1304 (1983).
[3] Again, as our Civil Rules of Procedure are modeled after the federal rules, we may look to federal decisions on this issue for guidance thereon. See Bragg v. Warwick Shoppers World,Inc., 102 R.I. 8, 227 A.2d 582, 584 (1967); see also Kellyv. C.H. Sprague Sons Co., 455 A.2d 1302, 1304 (1983).
[4] The majority of jurisdictions deem standing to be included within subject matter jurisdiction. See 13A Charles A. Wright 
Arthur R. Miller, Federal Practice and Procedure: Civil 2d § 3531.15 at 104-105 (1984); see also Mass. Proc., Civil Procedure § 17:1 (1998 supplement). Nevertheless, these jurisdictions occasionally relax the standing requirement and permit judgment on the merits if the issue of standing is raised at a late date.
"If the case survives to trial, the burden of establishing standing remains with the plaintiff. It may be possible to arrange the trial to present standing issues first, so that undue waste is avoided if the case must be dismissed. If the matters progress further, it may be wondered whether standing requirements might be relaxed on occasion to permit judgment on the merits. Obviously many of the protective features of standing doctrine should not be surrendered lightly. The issues on the merits may be difficult, far-reaching, or poorly presented. The decree indicated by potential findings of illegality may be drastic or difficult to frame and supervise. The interests of others may be affected. Nonetheless, the finer punctilio of standing doctrine often seems difficult to justify. Once a full trial has clearly shown a violation that warrants correction, some points of standing doctrine may properly be ignored." 13A Charles A. Wright Arthur R. Miller, Federal Practice andProcedure: Civil 2d § 3531.15 at 104-105 (1984).
[5] The use of remittitur has been approved by our Supreme Court as a technique which serves as a "means of avoiding unnecessary relitigation of the same issues and [provides] just and speedier resolutions." Michalopoulos v. C DRestaurant, Inc., 764 A.2d 121, 125 (R.I. 2001) (per curiam) (quoting Gardiner v. Schobel, 521 A.2d 1011, 1015 (R.I. 1987)).See Cotrona v. Johnson Wales College, 501 A.2d 728, 734 (R.I. 1985) (finding "[remittitur and additur] present the court with an opportunity to prevent the burdensome `costs', `delays' and `harassments' * * * of a retrial in a case that has clearly `shocked the court's conscience'") and (quoting Bishop v.Harski, 191 N.J. Super. 109, 113, 465 A.2d 577, 579 (1983)).